## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DAVID E. ROGERS, on behalf of Himself and a Class of Persons Similarly Situated, and on behalf of the Baxter International, Inc. and Subsidiaries Incentive Investment Plan and the Baxter Healthcare Corporation of Puerto Rico Savings and Investment Plan, | ) ) ) ) ) ) | |
| | ) | No. 04 C 6476 |
| Plaintiff, | ) ) | Judge Joan B. Gottschall |
| v. | ) ) | Magistrate Judge Nan R. Nolan |
| BAXTER INTERNATIONAL INC., the Administrative Committee, the Investment Committee, Brian P. Anderson, John J. Greisch, Harry M. Jansen Kraemer, Jr., Robert Parkinson, Jr., and John Does 1-30 | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David E. Rogers ("Rogers") brings this class action suit against Baxter International, Inc. ("Baxter," "the company") and other 401(k) fiduciaries for violating certain provisions of the Employee Retirement Income Security Act (ERISA). Rogers alleges that the defendants allowed and encouraged participants to invest their retirement funds in Baxter common stock when they knew, or should have known, that the stock's value was inflated. The defendants collectively have moved to dismiss the complaint on several grounds pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons explained below, the motion is granted in part and denied in part.

# BACKGROUND

Baxter, a Delaware corporation headquartered in Illinois, is engaged in the manufacture and distribution of healthcare products and services. Rogers is a former Baxter employee who brings this suit on behalf of himself, and on behalf of two employee benefit plans: the Baxter International, Inc. and Subsidiaries Investment Plan ("the Baxter Plan") and the Baxter Healthcare Corporation of Puerto Rico Savings and Investment Plan ("the Puerto Rico Plan") (together, "the Plans").[1] He also purports to bring suit on behalf of a class consisting of certain Baxter employees who participated in the Plans between January 1, 2001 and the present ("the class period").

As "defined contribution" or "individual account" plans under ERISA Section 3(34), 29 U.S.C. § 1002(34), the Plans provided individual accounts for each participant and allocated benefits based upon the amount contributed to each participant's account. Under the Plans, participants were allowed to invest their retirement money in one or more funds. One of the funds, the Baxter Common Stock Fund, consisted almost entirely of Baxter common stock. The value of Baxter's stock dropped sharply in July of 2002, following Baxter's disclosure that it had inflated its earlier financial projections. Rogers alleges that Baxter had predicted significant profits despite the fact that several of its divisions were performing poorly and experiencing serious difficulties.[2] The

---

[1] For reasons that are unclear, although Rogers speaks of both Plans in his complaint, he appears to speak only of the Baxter Plan in his response to the defendants' motion to dismiss and is subsequent motions submitted to the court.

[2] Among other things, Rogers alleges that Baxter's Renal Division was experiencing declining demand for its products due to deaths that had been linked to certain of its dialyzers; that Baxter's Swedish dialyzer operations had closed, which left Baxter unable to compete in the market for low-cost dialysis products; and that the revenues of Baxter's BioScience Division were affected by over-saturation of the market for Albumin-based products and by capacity constraints that caused sales of intravenous immunoglobulin product (IGIV) to fall far short of internal projections.

stock's value again dropped sharply in July of 2004, following Baxter's announcement that, due to allegedly improper accounting methods used in connection with its Brazilian operations, the company intended to restate several years' worth of financial statements.[3]

Rogers purports to bring suit on behalf of all Plan participants whose accounts held Baxter common stock during the period covering these two incidents.[4] Named as defendants in the complaint are entities and individuals who are alleged to have had fiduciary duties to the Plans and who, despite their knowledge of the abovementioned problems, failed to take appropriate action. The defendants are: (1) Baxter; (2) the Plans' Administrative Committee; and (3) the Plans' Investment Committee.[5] In addition to these entities, Rogers names several individuals as defendants: (1) Brian P. Anderson and John J. Greisch ("the CFOs"), both of whom served as Senior Vice President and CFO at some point during the relevant class period; and (2) Harry M. Jansen Kraemer, Jr., and Robert L. Parkinson, Jr. ("the CEOs"), both of whom served as Baxter's CEO and as Chair of Baxter's Board of Directors at some point during the class period.

The complaint consist of five counts. Count I alleges that the defendants mismanaged Plan assets by failing to diversify investments and by selecting Baxter stock as an investment option when the defendants knew or should have known that its price was inflated. Similarly, Count II alleges

_____

[3] At the time Rogers filed his corrected amended complaint, two securities fraud cases arising out of the July 2002 and July 2004 events were pending in courts in the Northern District of Illinois: *Asher v. Baxter International, Inc.*, No. 02 C 5608 (N.D. Ill. filed Aug. 7, 2002), and *Higginbotham v. Baxter International, Inc.*, No. 04 C 4909 (N.D. Ill. filed July 27, 2004). The *Higginbotham* suit was subsequently dismissed. *See Higginbotham v. Baxter Intern., Inc.*, No. 04 C 4909, 2005 WL 3542521 (N.D. Ill. 2005).

[4] Rogers' Motion for Class Certification is presently pending on the court's docket.

[5] The complaint also lists Doe Defendants 1-30, as members of the Administrative and Investment Committees whose identities presently are unknown.

that the defendants imprudently invested in Baxter common stock and wrongfully presented Baxter

stock as an investment alternative to participants when the defendants knew or should have known

that its price was inflated. Count III alleges that the defendants breached their fiduciary duties by

making material misrepresentations and nondisclosures. Count IV alleges divided loyalty, claiming

that the defendants engaged in a scheme to artificially inflate the price of Baxter stock, allowing

them to benefit in the form of stock options and "in other ways connected to executive compensation

at Baxter." Count V alleges that Baxter is liable under principles of *respondeat superior* for its

Board of Directors' failure to appoint, inform, supervise, and monitor the activities of the

Administrative and Investment Committees.

The defendants have moved to dismiss the complaint on three grounds. As a threshold

matter, they insist that ERISA does not provide a basis for the plaintiff's claims. Second, they argue

that the complaint is too conclusory to comply with the pleading requirements of Fed. R. Civ. P.

8(a) and 9(b). Finally, they argue that Rogers' suit fails because his allegations either do not involve

fiduciary acts, were not undertaken by fiduciaries, or are brought against parties with no

responsibility for the duties allegedly breached.

## ANALYSIS

### I.    Standard of Review

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must

accept the factual allegations in the plaintiff's complaint as true. *Leatherman v. Tarrant County*

*Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164 (1993). The court then considers

whether any set of facts consistent with the allegations could support the plaintiff's claim for relief.

*Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992). A complaint need only contain

enough facts to put the defendant on notice of the claim so that an answer can be framed. *Flannery v. Recording Indus. Assoc. of America,* 354 F.3d 632, 639 (7th Cir. 2004). Dismissal should be granted only if it is "beyond doubt" that the plaintiff cannot prove any set of facts to support a claim entitling him to relief. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

## II.     ERISA

Defendants first argue that Rogers' claims are not cognizable under either of the sections of ERISA that he purports to invoke. Rogers' complaint seeks both monetary relief pursuant to ERISA § 502(a)(2), codified at 29 U.S.C. § 1132(a)(2), and equitable relief under ERISA § 502(a)(3), codified at 29 U.S.C. § 1132(a)(3). Defendants argue that § 502(a)(2) does not provide for individualized relief but instead requires relief to redound to the benefit of the *plan as a whole*. Since Rogers seeks relief only on behalf of a subset of the Plans' participants, defendants contend that his claim cannot be brought under § 502(a)(2). Moreover, defendants argue that while claims under § 502(a)(3) need not be brought on behalf of the entire plan, that section allows only for equitable relief. While Rogers claims to seek such relief, defendants insist that his claims are merely a disguised attempt to obtain monetary or legal recovery. Because Rogers cannot bring suit under either § 502(a)(2) or § 502(a)(3), defendants claim that the entire suit must be dismissed. The court considers defendants' arguments with respect to each section in turn.

## A.     ERISA Section 502(a)(2) and the Necessity of Plan-Wide Relief

Although Rogers' complaint in some places purports to seek relief on behalf of "the Plans,"[6]

_____

[6] Rogers' prayer for relief asks for, among other things, an order

> compelling the Defendants to make good to the Plans all losses to
> the Plans resulting from Defendants' breaches of their fiduciary
> duties, including losses to the Plans resulting from imprudent

5

the putative class on behalf of which he brings suit is clearly a subset of the Plans as a whole. Rogers' claims relate solely to the artificial inflation of Baxter common stock. Because Baxter stock was only one investment option available under the Plans, however, participants who opted for other investment alternatives were unaffected by the breaches of fiduciary duty that Rogers alleges. Hence, if defendants are correct in claiming that § 502(a)(2) does not allow suits on behalf of a subset of a plan's participants, Rogers's complaint, at least insofar as it seeks monetary relief, fails.

Courts are currently in disagreement over the proper interpretation of § 502(a)(2). The provision's statutory language is not entirely clear. Section 502(a)(2) provides that ERISA plan participants and beneficiaries may bring civil suits for "appropriate relief" under § 409(a), codified at 29 U.S.C.A. § 1109; § 409(a) provides that fiduciaries shall be personally liable to make good "any losses to the plan" resulting from the breach of their duties and "to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." *Id*. However, in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134 (1985), the Supreme Court offered the following gloss on sections 502(a)(2) and 409(a):

> [S]ection 502(a)(2) authorizes a beneficiary to bring an action against a fiduciary who has violated § 409. Petitioner contends, however, that recovery for a violation of § 409 inures to the benefit of the plan as a whole. We find this contention supported by the text of § 409, by the statutory provisions defining the duties of a fiduciary, and by the provisions defining the rights of a beneficiary.

---

> investment of the Plans' assets, and to restore to the Plans all profits the Defendants made through the use of the Plans' assets, and to restore to the Plans all profits which the Participants would have made if the Defendants had fulfilled their fiduciary obligations.

Pl's Corr. Am. Compl., Prayer of Relief ¶ C.

> ... A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.

*Id*. at 140-42.

Some courts have construed *Massachusetts Mutual* to mean that suits brought pursuant to § 502(a)(2) must benefit *all* of a plan's participants. *See, e.g.*, *Horan v. Kaiser Steel Retirement Plan,* 947 F.2d 1412, 1417-18 (9th Cir. 1991); *Fisher v. J.P. Morgan Chase & Co.*, 230 F.R.D. 370, 375-76 (S.D.N.Y. 2005) ("Because plaintiffs seek recovery on behalf of a 'specific subclass of participants' and not on behalf of the Plan itself, they may not invoke the right of action contained in section 502(a)(2).").

Most courts, however, have rejected that position, noting that the Court in *Massachusetts Mutual* was addressing only the question whether an individual participant could recover under § 502(a)(2), not specifically whether a *group* of participants could recover. *See, e.g.*, *In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231, 241 (3d Cir. 2005); *Kuper v. Iovenko*, 66 F.3d 1447, 1452-53 (6th Cir. 1995); *Woods v. Southern Co.*, 396 F. Supp. 2d 1351, 1362 (N.D. Ga. 2005); *In re CMS Energy ERISA Litig.,* 312 F. Supp. 2d 898, 912-13 (E.D. Mich. 2004); *In re Honeywell Int'l ERISA Litig.,* Civ. No. 03-1214 (DRD), 2004 WL 3245931, at *15 (D.N.J. Sept. 14, 2004); *Kling v. Fidelity Management Trust Co.*, 270 F. Supp. 2d 121, 126 (D. Mass. 2003). Indeed, two of the chief authorities relied on by the defendants have been overturned or vacated since the filing of their motion to dismiss. *See, e.g.*, *Milofsky v. American Airlines, Inc.*, 404 F.3d 338 (5th Cir. 2005) *reh'g en banc granted,* No. 03-11087, 418 F.3d 429 (5th Cir. July 19, 2005) (vacating a Fifth Circuit panel's decision holding that suits under § 502(a)(2) must benefit all plan participants); *In re*

*Schering-Plough Corp. Erisa Litigation*, 387 F. Supp. 2d 392, 401 (D.N.J. 2004) (holding that suits under § 502(a)(2) must be benefit all plan participants), *overruled by In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231 (3d Cir. 2005).

These courts have argued that fixing too literally upon the Court's language in *Massachusetts Mutual* would ultimately frustrate Congress's purpose in passing the ERISA legislation. As the *Kuper* Court put it:

> Defendants' argument that a breach must harm the entire plan to give rise to liability ... would insulate fiduciaries who breach their duty so long as the breach does not harm all of a plan's participants. Such a result clearly would contravene ERISA's imposition of a fiduciary duty that has been characterized as "the highest known to law."

*Kuper*, 66 F.3d at 1453 (internal citations omitted).

The Seventh Circuit has yet to address the issue. However, dicta in some cases could be viewed as supporting the "whole plan" interpretation. *See, e.g.*, *Plumb v. Fluid Pump Service, Inc.*, 124 F.3d 849, 863 (7th Cir. 1997) ("Any recovery under § 502(a)(2) for breach of fiduciary duty must go to the plan as a whole rather than to individual beneficiaries."); *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 992 (7th Cir. 1993) (characterizing *Massachusetts Mutual* as holding that "the recovery must be to the plan itself" and noting that other "courts have also recognized that any recovery from an action for breach of fiduciary duty goes to the plan as a whole and not an individual beneficiary"). Moreover, one court in this district has accepted the position put forth by the defendants. *See Jackson v. Kroch's & Brentano's, Inc.*, No. 93 C 1333, E.D., 1993 WL 243295, at *3 (N.D. Ill. June 20, 1993) ("ERISA grants no private right of action by a beneficiary *qua* beneficiary; rather it accords beneficiaries the right to sue on behalf of the entire plan if a fiduciary

breaches the plan's terms ....  Under [*Massachusetts Mutual*], Jackson has no standing to bring claims ... claims on behalf of individuals or subgroups of ESOP beneficiaries.").

The court notes that the latter cases were decided almost a decade ago.  The Seventh Circuit cases, moreover, juxtapose suits to benefit a single individual with suits brought on behalf of entire plans; they do not address the situation presented here, where a suit stands to benefit a large number of a plan's participants without benefitting the plan as a whole.  Following the majority of courts to have considered the question, particularly in recent years, the court finds that the Rogers may bring a claim under § 502(a)(2), even though the putative class constitutes a subset of the Plans' participants.[7]  The court finds that this interpretation best effectuates Congress's intent in passing the ERISA statute, which was to provide a high degree of protection to any and all plan participants from fiduciary abuse.  *Milofsky*, 404 F.3d at 348 (5th Cir. 2005) (King, C.J., dissenting).  The court therefore denies defendants' motion to dismiss Rogers' claim under § 502(a)(2).

**B.    502(a)(3): Equitable Relief Under ERISA**

Defendants also contend that jurisdiction and standing are absent because Rogers is not seeking appropriate relief under ERISA § 502(a)(3).  That section allows individualized breach of fiduciary duty suits, but only for "appropriate equitable relief."  29 U.S.C. § 1132 (a)(3).  Although Rogers' complaint purports to seek equitable remedies, such as the imposition of a "Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plans as a result of breaches of fiduciary duty," Pl.'s Am. Corr. Compl., Prayer for Relief ¶ D, defendants insist that these claims are merely an attempt to pursue monetary or legal relief by other means.

---

[7] For the purposes of this motion, the court assumes without deciding that the proposed class is indeed certifiable pursuant to Fed. R. Civ. P. 23.

The question whether a particular remedy should be characterized as legal or equitable for the purposes of § 502(a)(3) is not always easily answered. *See, e.g.*, John H. Langbein, *What ERISA means by "Equitable": The Supreme Court's Trail of Error in* Russell, Mertens, *and* Great-West, 103 Colum. L. Rev. 1317 (2003). In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), the Supreme Court explained that the term "equitable relief" in § 502(a)(3) must refer to those categories of relief that were typically available in equity. *Id*. at 210 (quoting *Mertens v. Hewitt Associates,* 508 U.S. 248, 256 (1993)). The Court acknowledged the availability of "equitable remedies" such as constructive trusts and equitable liens, which might entail monetary recovery of a sort, but noted that these were available "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id*. at 213. The Court went on to state:

> A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id*. at 213-14.

The basis for Rogers' claim for equitable relief is not entirely clear. In invoking the constructive trust remedy, for example, Rogers does not identify particular funds in the defendants' possession that should be returned. Nevertheless, the court cannot say at this stage of the litigation that Rogers could prove no set of facts that would entitle him to the relief he seeks under § 502(a)(3). *See, e.g.*, *In re Enron Corp.*, 284 F. Supp. 2d at 679. The court thus denies defendants'

motion to dismiss Rogers' claims under § 502(a)(3).

## II.    Sufficiency of the Complaint's Pleadings

Defendants next argue that Rogers' complaint is insufficiently pleaded. Their argument is twofold. First, defendants contend that the complaint's allegations are conclusory statements of law and thus fail to comply with the standards of Fed. R. Civ. P. 8(a)(2). Defendants also argue that certain of Rogers' allegations sound in fraud and are therefore subject to, but fail to meet, the heightened pleading requirements of Fed. R. Civ. P. 9(b).

## A.    Rule 8(a)(2)

Defendants argue that Rogers' complaint should be dismissed because his allegations are too conclusory. In particular, defendants claim that the complaint fails to distinguish between the different defendants and to specify the particular misconduct that each is alleged to have committed.

The court is not persuaded by this argument. Under Rule 8(a)(2), plaintiffs are not required to plead facts, legal theories, cases, or statutes, but merely to describe their claims briefly and simply. *See, e.g.*, *Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2003). The defendants cite *Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd.*, No. 01 CV 11502(GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004), for the proposition that a complaint's failure to attribute specific misconduct to a particular defendant warrants dismissal under Rule 8(a)(2). But the complaint in that case was deficient for a number of other reasons beyond its failure its specify the various defendants' alleged misdeeds. Nor, in any event, is it entirely correct to say that Rogers' complaint fails to differentiate between the different defendants. Rogers separately describes each of the defendants and the role that each entity or individual allegedly played with respect to the Plans. This is sufficient to put all of the defendants on notice regarding their alleged

wrongdoing.

**B.    Rule 9(b)**

Defendants take particular issue with paragraph 71 of Rogers's complaint, which supports Rogers' "divided loyalty" claim.  That paragraph alleges that "Defendants engaged in a scheme and course of conduct to artificially inflate the price of Baxter stock, thereby allowing them to benefit from the artificial inflation in the form of stock options, stock ownership and in other ways connected to executive compensation at Baxter."  Pl.'s Corr. Am. Compl. ¶ 71.  Defendants insist that this claim sounds in fraud, that it is therefore subject to Rule 9(b)'s heightened pleading requirements, and that it fails to meet that standard.

While claims for breach of fiduciary duty under ERISA generally are not subject to heightened pleading standards, Rule 9(b) does apply where the plaintiff alleges that a defendant's breach of fiduciary duty took the form of a fraudulent act.  *See, e.g.*, *Concha v. London*, 62 F.3d 1493, 1502-03 (9th Cir. 1995) (Rule 9(b) "is not applicable in cases in which the complaint alleges breaches of fiduciary duty under ERISA, and does not allege fraud or mistake").  As one court has explained, "when breach of fiduciary claims allege that defendants failed to act reasonably in light of adverse circumstances created by the fraudulent activity of others, rather than actually participated in the fraud, Rule 8(a) still applies.  However, when the alleged breach of the fiduciary *is* the fraudulent act, Plaintiffs are required to plead with particularity."  *Pietrangelo v. NUI Corp.*, No. Civ. 04-3223(GEB), 2005 WL 1703200, at *9 (D.N.J. July 20, 2005) (internal quotations and citations omitted); *see also Adamczyk v. Lever Bros. Co., Div. of Conopco*, 991 F. Supp. 931, 939 (N.D. Ill. 1997) ("The amended complaint alleges that defendant 'knowingly or negligently' misled plaintiffs in breach of defendant's fiduciary duties. To the extent to which plaintiffs allege knowing

conduct, plaintiffs have failed to plead facts with particularity as required by Rule 9(b).").  In addition, averments of fraud must be pled with particularity even if the plaintiff does not style his claim as one for fraud.  *In re ADC Telecommunications, Inc., ERISA Litigation L*, No. MASTER FILE, 03-2989 ADM/FLN, 2004 WL 1683144, at * 2 (D. Minn. Jul 26, 2004).

The question whether paragraph 71 of Rogers' complaint amounts to an allegation of fraud is a close one.  *Compare In re CMS*, 312 F. Supp. 2d at 909 (claims having to do with communication of inaccurate information and the failure to disclose transactions that rendered financial statements materially false, asserted a claim for breach of fiduciary duty and did not sound in fraud) *with Vivien v. Worldcom, Inc.*, No. C 02-01329 WHA, 2002 WL 31640557, at *6 -7 (N.D. Cal. July 26, 2002) (claim that ERISA plan fiduciaries breached fiduciary duty by issuing summary plan descriptions that incorporated false SEC filings as part of scheme to induce plan participants to purchase company stock sounded in fraud).  Although paragraph 71 does not use the term "fraud" or "fraudulent," it alleges conduct that is classically associated with fraud: a "scheme" and "course of conduct" engaged in by the defendants to disseminate inaccurate and misleading information. The court finds that this allegation is sufficient to bring paragraph 71 within Rule 9(b)'s ambit.

Under Rule 9(b), a plaintiff must plead "the circumstances constituting fraud ... with particularity."  *In re HealthCare Compare Corp. Secs. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996). Specifically, the complaint must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).  In other words, a plaintiff must allege "the who, what, when, where and how" of the fraud.  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Paragraph 71 fails to meet Rule 9(b)'s requirements. It is true that paragraph 71 itself need not contain all of the necessary information, so long as it is found elsewhere in the complaint. *See, e.g.*, *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005). But the rest of the complaint is similarly silent concerning the particulars of the defendants' alleged scheme to inflate the price of Baxter stock for their own personal gain. While the complaint does allege that the defendants' individual actions and omissions resulted in the artificial inflation of Baxter stock, it provides no details about any "scheme" in which they participated.

Count IV of Roger's complaint, which is premised on paragraph 71, is therefore dismissed without prejudice. Rogers shall have leave to amend his complaint and to replead his divided loyalty claim, either by recasting his assertions in a way that does not allege fraud, or by meeting the requirements of Rule 9(b). Any amendment must be filed within 21 days of the date of this order.

## III.    Defendants' Additional Objections to the Pleadings

In a final series of arguments, the defendants take issue in a variety of ways with Rogers's attribution of fiduciary status to the different defendants and their acts. Specifically, defendants contend that Rogers's allegations either do not involve fiduciary acts, pertain to acts that were not undertaken by fiduciaries, or are brought against parties with no responsibility for the duties allegedly breached. The court first sets forth the basic framework within which fiduciary status is determined under ERISA, and then considers the arguments raised with respect to each of the defendants.

### A.    Fiduciary Status Under ERISA

ERISA sets forth the various ways in which fiduciary status may arise as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Because a person is deemed a fiduciary only *to the extent* that he or she exercises discretionary authority, a person may be an ERISA fiduciary for some purposes, but not for others. *See, e.g.*, *Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004) (quoting *Plumb,* 124 F.3d at 854). In determining whether a person may be held liable for breach of fiduciary duty, the court must ask whether the person is a fiduciary with respect to the particular activity at issue. *Id*. Courts frequently have noted that in passing ERISA, Congress intended the term "fiduciary" to be broadly construed. *See, e.g.*, *Chicago Bd. Options Exchange, Inc. v. Connecticut General Life Ins. Co.*, 713 F.2d 254, 260 (7th Cir. 1983); *see also Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 401 (6th Cir. 1997).

While plan documents are clearly important in determining whether an individual or entity is a fiduciary, it is not necessary for a plan to contain an express delegation of fiduciary duty; a person or entity may also become a "functional fiduciary" simply by performing fiduciary duties or by exercising discretion of a fiduciary nature. *See, e.g.*, *Concha*, 62 F.3d at 1501-02; *see also In re Polaroid ERISA Litigation*, 362 F. Supp. 2d 461, 473 (S.D.N.Y. 2005) ("[A]n individual may be a fiduciary as to plan functions for which the plan affords him no discretionary authority if he nonetheless exercises ... discretionary authority.") (internal quotation marks omitted); *In re Electronic*

*Data Systems Corp. "ERISA" Litigation*, 305 F. Supp. 2d 658, 668 (E.D. Tex. 2004) ("When a defendant is a functional fiduciary, it means that the defendant has become a fiduciary not because of the plan terms, but because the defendant has exercised fiduciary authority.").

In addition, although a defendant's fiduciary status can be determined on a motion to dismiss, courts often decline to do so because of the bearing that factual issues may have on the issue. *See, e.g., In re Elec. Data Sys. Corp.*, 305 F. Supp. 2d at 671 ("Plaintiffs have alleged a very broad duty to monitor requiring defendants to take at least seven specific actions in this case. However, at this stage of the proceedings, the Court will not endeavor to define the duty to monitor's outer edges with no factual record to indicate how far this case may or may not push those edges."); *In re Sprint Corp. ERISA Litigation*, 388 F. Supp. 2d 1207, 1228 (D. Kan. 2004); *Stein v. Smith,* 270 F. Supp. 2d 157, 173-74 (D. Mass. 2003) (rejecting argument on motion to dismiss that CEO was not fiduciary with respect to various communications addressed to employees since plaintiffs might be able to show the specific contextual facts to prove that he spoke while acting in fiduciary capacity).

## B.     The Fiduciary Status of the Defendants and/or their Alleged Acts

### 1.     Baxter

Rogers' complaint alleges that Baxter acted as a fiduciary with respect to the Plans and was responsible for appointing, supervising, and monitoring those who administered the Plans and its assets. Citing various provisions of the Plan documents,[8] defendants argue that Baxter was not in fact

---

[8] Defendants have attached the Plan documents to their motion to dismiss. Citing *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993), they argue that documents attached by a defendant to a motion to dismiss are considered part of the pleadings where the documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. Def.'s Mot. to Dismiss, at 5 n.2. *Venture Associates* is not clearly applicable here, however, since it is debatable whether Rogers' complaint "refers" to the Plan documents and whether they are central to his claim. Nevertheless, Rogers does not object to the

a fiduciary of the Plans. They claim, for example, that Baxter's decision to establish the Baxter Plan, and to offer Baxter stock as an investment option, are settlor matters that do not implicate fiduciary duties. They also point out, for example, that Baxter is not a named fiduciary of the Baxter Plan and that the Plan documents for both the Baxter Plan and the Puerto Rico Plan give the authority to appoint and remove those responsible for managing the Plans not to Baxter but to certain subcommittees of Baxter's Board of Directors.

The court disagrees. As an initial matter, the court notes that, contrary to the defendants' characterization, the Plan documents do not show unequivocally that Baxter delegated its involvement with the Plans to other entities. Defendants are correct in asserting that the Baxter Plan does not name Baxter as one of its fiduciaries. But that fact does not appear significant, since the Baxter Plan does not appear to name *any* fiduciaries. Moreover, the Plans suggest that Baxter retains a consultative role with respect to the Investment Committee's policies. *See* 1997 Plan, Ex. 3, § 9.3; 2004 Plan, Ex. 4, § 9.3; P.R. Plan, Ex. 5, § 9.3 (providing that the Investment Committee has the duty, *inter alia*, to "establish and from time to time revise the investment policy of the Plan, to communicate and *consult with the Company* [and] the Administrative Committee ... regarding the investment policy applicable to the Plan as a whole or to any individual investment fund") (emphasis added). In short, the language of the Plan documents can be read as suggesting that Baxter possesses fiduciary responsibility.

_____

defendants' use of the Plan documents in his response brief. Indeed, Rogers himself refers to the documents in his Response. *See, e.g.*, Pl.'s Resp. at 21. Nor, in any case, are the Plan documents ultimately dispositive of any of the questions at issue at this stage of the litigation. The court therefore will allow defendants' reliance on the Plan documents in their motion to dismiss.

Second, even if the Plan documents gave Baxter no fiduciary responsibilities, Baxter might nonetheless be deemed a fiduciary if it in fact acted as a fiduciary with respect to the Plans. In setting forth his allegations against Baxter, Rogers claims that the company acted as a fiduciary with respect to the Plan. This allegation can be taken as asserting that Baxter acted as a "functional fiduciary," regardless of whether the company was formally identified as a fiduciary in the Plan documents. *See, e.g.*, *Baker*, 387 F.3d at 663-64 (company could be regarded as a fiduciary since, although plan delegated to management committee "full power and authority to invest and reinvest the assets of the Plan," complaint alleged that the company had involvement with and control over the committee).

Finally, defendants argue that Baxter cannot be held liable under the doctrine of *respondeat superior* for its Board of Directors' failure to appoint, inform, supervise, and monitor the activities of the Administrative and Investment Committees. It is presently unclear whether the *respondeat superior* doctrine applies in the ERISA context. In *Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1093-95 (N.D. Ill. 2004), the court noted that the Seventh Circuit has yet to pronounce on the issue and declined to dismiss the plaintiff's claim. However, the court also announced its willingness to reconsider the issue on a more fully developed factual record. Here, too, the court will allow the plaintiff's *respondeat superior* claim to go forward, but may reappraise the issue again after discovery has taken place.

## 2. The Administrative Committee

Defendants argue that Rogers has failed to state a claim against the Administrative Committee, since the Plan documents give that entity only ministerial authority with respect to the Plans. Specifically, defendants contend that the Plan documents give the Administrative Committee responsibility for construing and interpreting the Plans' provisions, and for preparing, maintaining,

and distributing employee records and information related to participants' Plan benefits. Defendants assert that any discretionary power given to the Administrative Committee relates "in general" only to plan administration and maintenance. None of Rogers' allegations, defendants contend, relate to matters within the Administrative Committee's power or discretion.

The court disagrees. First, the list of Administrative Committee responsibilities enumerated in § 9.2 of each Plan document is illustrative, not exhaustive, thus leaving unclear the full extent of the Administrative Committee's authority. Indeed, § 9.2(k) of the Baxter Plan gives the Administration Committee the responsibility for "discharg[ing] all other duties set forth in the Plan." *See also* P.R. Plan, Def.'s Ex. 5, § 9.2(l). The Plan documents also give the Administrative Committee responsibility for preparing and distributing "disclosures, descriptions and reporting documents regarding the Plan." 1997 Plan, Def.'s Ex. 3, § 9.2(f); 2004 Plan, Def.'s Ex. 4, § 9.2(f); P.R. Plan, Def.'s Ex. 5, § 9.2(g). These are clearly related to Rogers' allegations.

Defendants rely upon an interpretive "question and answer" promulgated by the Department of Labor (DOL) for the proposition that the Administrative Committee's responsibilities were not fiduciary in nature. *See* 29 C.F.R. § 2509.75-8, at D2. That regulation sets forth a number of responsibilities that are not to be deemed fiduciary under ERISA. While some of those responsibilities are among those given to the Administrative Committee by the Plan documents, the Administrative Committee is given a number of additional duties that go beyond those listed in the DOL's Answer. The DOL's regulation thus does not establish that the Administrative Committee's duties were purely ministerial in nature.

In addition, as the court has noted above, the Plan documents are not dispositive as to whether the Administrative Committee is a fiduciary with respect to the Plans. Also relevant is whether the

Administrative Committee in fact exercised the functions alleged by Rogers, regardless of the Plans'

formal allocation of authority.  Hence, the court finds that Rogers has adequately stated a claim

against the Administrative Committee.

### 3.    The Investment Committee

Defendants challenge Rogers' claim against the Investment Committee on several grounds.

First, while they acknowledge that the Investment Committee was responsible for offering Baxter

stock under the Plans, defendants insist that the decision to offer the Baxter Stock Fund as an

investment option does not implicate fiduciary duties.  Hence, they contend, insofar as Rogers seeks

to hold the Investment Committee liable for failing to terminate the Baxter Stock Fund as an

investment option, Rogers has failed to state a claim for breach of fiduciary duty.

The court is not persuaded.  Regardless of whether the initial decision to offer a particular

investment option generally implicates fiduciary duties, courts frequently have found plaintiffs to

have stated claims for breach of fiduciary duty where the complaint alleges that a defendant

continued to offer stock as an investment option despite the fact that he knew or should have known

that the stock's price was inflated.  *See, e.g.*, *In re Williams Companies ERISA Litigation*, 271 F.

Supp. 2d 1328, 1342-43 (N.D. Okla. 2003) (motion to dismiss denied where plaintiff alleged that

investment committee members knew or should have known that company stock was significantly

inflated but continued to offer the stock as a viable investment option); *In re Worldcom, Inc.*, 263 F.

Supp. 2d 745, 765 (S.D.N.Y. 2003) (plaintiffs stated claim for breach of ERISA fiduciary duty by

alleging that defendants failed to act with prudence in continuing to offer company stock as one of

the investments offered under the plan).

Defendants next argue that the Investment Committee's decision to offer Baxter stock did not

involve a breach of fiduciary duty because investing in Baxter stock was not imprudent. Specifically, defendants contend that, despite the decline in Baxter stock's value following the July 2002 announcement, the stock "substantially achieved" its 2002 growth projections. They also claim that the stock "quickly recovered" in the wake of the 2004 announcement so that, by the time Rogers filed his original and amended complaints, the stock's value had actually increased.

Again, the court finds defendants' argument unpersuasive. The chief authority cited by defendants in support of their position is *In re Duke Energy ERISA Litigation*, 281 F. Supp. 2d 786 (W.D.N.C. 2003). That case, however, involved an Employee Stock Ownership Plan (ESOP), and ESOP fiduciaries who invest assets in employer stock are entitled to a presumption that they acted consistently with ERISA. *See, e.g.*, *In re Sears, Roebuck & Co. ERISA Litigation*, No. 02 C 8324, 2004 WL 407007, at *4 (N.D. Ill. Mar. 3 2004). Defendants do not argue that the plan here is an ESOP or is entitled to the same presumption.

Moreover, case authority running contrary to the defendants' position is substantial. *See, e.g.*, *In re Sprint Corp. ERISA Litigation*, 388 F. Supp. 2d 1207, 1223 (D. Kan. 2004) (noting "ample authority" contrary to *In re Duke Energy*); *Pennsylvania Federation v. Norfolk Southern Corp. Thoroughbred Retirement Investment Plan of Norfolk Southern Corp.*, No. Civ.A. 02-9049, 2004 WL 228685, at *7 (E.D. Pa. Feb. 4, 2004) ("To sustain a claim for breach of the duty of prudence, the Plaintiffs must allege fiduciaries knew or should have known of some information that would lead a reasonable person to question the prudence of further investment in the N.S. Stock Fund. Although a drop in stock price and general weakness in the company's performance is not sufficient to win judgment on a breach of the duty of prudence, it is enough to survive a motion to dismiss."); *see also In re Syncor ERISA Litigation*, 351 F. Supp. 2d 970, 982 (C.D. Cal. 2004) (refusing to address

defendants' argument that stock had rebounded after one-time loss because the issue was "evidentiary in nature and not properly considered on a motion to dismiss"). The court finds that on a motion to dismiss, it would be inappropriate to decide whether Baxter stock's value "substantially recovered" after having declined, or whether it should otherwise be regarded as a prudent investment.

Defendants' final argument in support of dismissing the claims against the Investment Committee is that the Committee and its members were required to obey securities laws. They claim that if they had disclosed information to the general public about Baxter's internal problems, the price of Baxter common stock would have dropped, just as it dropped following the 2002 and 2004 announcements, in which case Rogers and the putative class members would have suffered the same losses as those that form the basis for their present complaint. The only way to disclose the relevant information to the participants without triggering a drop in the stock's value, defendants claim, would have been to disclose the information *only* to the participants, which would have amounted to a violation of securities laws. Hence, defendants argue, the Investment Committee was not required to reveal information to the participants concerning Baxter's financial difficulties.

While the foregoing argument was accepted by the court in *In re McKesson HBOC, Inc. ERISA Litigation*, No. C00-20030RMW, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002), most courts have squarely rejected it and indeed have explicitly criticized the *McKesson* decision. *See, e.g.*, *Kling*, 323 F. Supp. 2d at 143 n.10 (noting that *McKesson* has been "sharply criticized"); *In re Syncor*, 351 F. Supp. 2d at 985 ("The Court ... declines to follow *McKesson*. Defendants may not avoid any duty they might have to disclose by hiding behind the securities laws."). When the same argument was raised in the context of Enron's ERISA litigation, one court remarked:

> This Court does not believe that Congress, ERISA or the federal securities statutes
> sanction such conduct or such a solution, i.e., violating all the statutes and conning

the public. As a matter of public policy, the statutes should be interpreted to require that persons *follow* the laws, not undermine them. They should be construed not to cancel out the disclosure obligations under both statutes or to mandate concealment, which would only serve to make the harm more widespread; the statutes should be construed to require, as they do, disclosure by Enron officials and plan fiduciaries of Enron's concealed, material financial status to the investing public generally, including plan participants, whether "impractical" or not, because continued silence and deceit would only encourage the alleged fraud and increase the extent of injury.

*In re Enron Corp.*, 284 F. Supp. 2d at 565.  This court believes that the same considerations apply in this case.  The court thus finds that Rogers has stated a claim against the Investment Committee.

### 4.    The CEOs: Kraemer & Parkinson

Defendants argue that Kraemer and Parkinson cannot be held liable for the Plan's investment-related decisions because the Plans delegate that responsibility to others.  Just as they argued with respect to Baxter, so the defendants insist with respect to Kraemer and Parkinson that the Plan documents belie Rogers' claim that the CEOs possessed the power to appoint and remove committee members, the power to monitor the Plans' assets, and the power to amend the Plans.

Once again, the court is not persuaded.  Kraemer and Parkinson were members of Baxter's Board of Directors.  While the Plan gives does not give the Board of Directors authority to appoint and remove members of the Investment and Administration Committees, it does give that authority to the Board of Directors' Compensation and Finance Committees.  Given the potential overlap between the Board and its various committees, the court finds that the CEOs' membership on the Board is sufficient to plead an ERISA claim.

In addition, even if the Plans cannot be said to grant the powers in question to the Board of Directors, the question remains open as to whether Kraemer and Parkinson exercised de facto authority over the Plans. Rogers's complaint alleges that Kraemer and Parkinson "exercised

23

discretionary authority with respect to: (i) management and administration of the Plan, and/or (ii) management and disposition of the Plans' assets." Pl's. Am. Compl. ¶¶ 13, 14. This allegation does not necessarily purport to base the CEOs' fiduciary status on powers expressly conferred in the Plan documents; it can also be understood as alleging that Kraemer and Parkinson each exercised authority concerning various aspects of the Plan irrespective of whether they formally were granted the power to do so. Rogers therefore has sufficiently stated claims against Kraemer and Parkinson.

### 5. The CFOs: Anderson & Greisch

Defendants claim that Rogers has failed to allege that either Anderson or Greisch breached any fiduciary duty. Specifically, they argue that Rogers' only specific claim with respect to the CFOs is that each signed Form 11-K Annual Reports for the Plans. Such acts, they argue, are merely ministerial, not fiduciary. In addition, they argue that Rogers has failed to allege that the Form 11-Ks were false or misleading.

The court finds that the claims against Anderson and Greisch, like those against Kraemer and Parkinson, have been sufficiently alleged. The complaint clearly claims that both individuals were ERISA fiduciaries, Pl's Am. Compl. ¶¶ 11-12, that both knew, or should have known, about Baxter's financial problems, Pl's Am. Compl ¶ 42, and that both breached their duties by continuing to offer and promote Baxter stock during the class period.

### IV. Cofiduciary Liability

Finally, the defendants argue that Rogers cannot invoke ERISA § 405, codified at 29 U.S.C. § 1105(a), under which cofiduciaries may be held liable for one another's breaches of fiduciary duty. In particular, § 405 provides three ways in which such liability may attach:

In addition to any liability which he may have under any other provisions of this part,

24

a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C.A. § 1105 (a).

Defendants contend that the complaint's cofiduciary claim is insufficiently pled, since it is set forth in only a single sentence. The court finds, however, that Rogers' cofiduciary claim meets the basic standards of Rule 8(a). In addition, defendants claim that since none of the entities or individuals named in the complaint breached any fiduciary duty, none can be held secondarily liable for another's breach of fiduciary duty. But having found that Rogers may be able to show that each of the defendants is liable for breach of fiduciary duty, the court also finds that Rogers may be able to show that the defendants are liable as cofiduciaries. Other courts have declined to dismiss cofiduciary liability claims where they have found that the defendants may be held liable as ordinary fiduciaries. *See, e.g.*, *In re AEP ERISA Litigation*, 327 F. Supp. 2d 812, 833 (S.D. Ohio 2004) (declining to dismiss cofiduciary claims where the court also had declined to dismiss the plaintiffs' fiduciary liability claims); *In re CMS Energy*, 312 F. Supp. 2d 898, 910 ("Having declined to dismiss the fiduciary liability claims, the court will also decline to dismiss any of the co-fiduciary liability claims at this juncture."). Here, too, the court will allow the cofiduciary claims to stand, since Rogers has properly alleged that the defendants are primarily liable as ordinary fiduciaries.

**CONCLUSION**

For the reasons stated above, the defendants' motion to dismiss is granted in part and denied in part.

ENTER:

_____/s/_____

JOAN B. GOTTSCHALL
United States District Judge

DATED:  February 22, 2006