# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DAVID E. ROGERS, on behalf of Himself and a Class of Persons Similarly Situated, and on behalf of the Baxter International, Inc. and Subsidiaries Incentive Investment Plan and the Baxter Healthcare Corporation of Puerto Rico Savings and Investment Plan, | ) ) ) ) ) ) | |
| | ) | No. 04 C 6476 |
| Plaintiff, | ) ) | Judge Joan B. Gottschall |
| v. | ) ) | Magistrate Judge Nan R. Nolan |
| BAXTER INTERNATIONAL INC., the Administrative Committee, the Investment Committee, Brian P. Anderson, John J. Greisch, Harry M. Jansen Kraemer, Jr., Robert Parkinson, Jr., and John Does 1-30 | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David E. Rogers ("Rogers") brings this putative class action suit against Baxter International, Inc. ("Baxter," "the company") and certain of its officials and employees (collectively, "the defendants") for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"). Rogers alleges that the defendants wrongfully allowed participants to invest their retirement funds in Baxter common stock when they knew, or should have known, that the stock's value was inflated. Before the court is Rogers' motion for class certification. For the reasons explained below, the motion is granted in part and denied in part.

**BACKGROUND**

Baxter is a corporation that manufactures and distributes healthcare products. At all times relevant to this suit, Baxter sponsored a 401(k) plan ("the Plan") that allowed its employees to invest their retirement savings in one or more Plan-selected funds. Among the investment options was the Baxter Common Stock Fund, which consisted almost entirely of Baxter common stock.

In July 2002, the price of Baxter stock dropped after the company announced that it would not meet its financial projections. Rogers alleges that Baxter fell short of its public predictions because many of its divisions were performing poorly and experiencing serious difficulties. Rogers further claims that, although the defendants knew or should have known about these problems, the defendants failed to protect Plan participants and continued to include the Baxter Common Stock Fund as an investment alternative.

In July 2004, the stock's price dropped again, after Baxter announced that, due to allegedly improper accounting methods used in connection with its Brazilian operations, the company intended to restate several years' worth of financial statements. Again, Rogers alleges that the defendants knew or should have known that Baxter stock was overvalued but failed to take any steps to protect the Plan participants.

Rogers claims that the defendants' actions in connection with the 2002 and 2004 events breached a variety of ERISA-imposed fiduciary duties. Specifically, the complaint alleges that the defendants breached their fiduciary duties by failing to act solely in the interests of the Plan's participants; failing to disclose material facts to the participants; failing to manage the Plan's assets with care, skill, and prudence; continuing to permit participants to invest in Baxter common stock; and failing to appoint, inform, monitor, and supervise those in charge of managing the Plan.

Each of the complaint's five Claims[1] seeks both monetary damages under ERISA section 502(a)(2) and equitable relief under ERISA section 502(a)(3). Rogers purports to bring suit on behalf of all current and former Plan participants for whose individual accounts the Plan held shares of the Baxter Common Stock Fund at any time from January 1, 2001 to the present.

## I. LEGAL STANDARD

Fed. R. Civ. P. 23(a) allows for certification when: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition to meeting all of Rule 23(a)'s requirements, a proposed class also must satisfy the requirements of at least one of Rule 23(b)'s three subsections. The burden is on the putative class representative to demonstrate that all of the requirements for class certification are satisfied. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

Courts have broad discretion in deciding whether to certify class actions. *See, e.g.*, *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). In general, however, Rule 23's requirements are to be applied liberally, particularly in early stages of litigation. *See, e.g.*, *Contract Buyers League v. F & F Inv.*, 48 F.R.D. 7, 14 (N.D. Ill. 1969) ("[T]he earlier the stage of the proceeding, the more

---

[1] The complaint uses the term "claim" instead of the term "count." The court finds the use of the former term unfortunate, since it creates an ambiguity between the complaint's five "claims" and the various legal and factual "claims" that each contains. As discussed more fully below, for example, each of the plaintiff's "claims" contains a separate claim for legal relief under ERISA section 502(a)(2) and equitable relief under ERISA section 502(a)(3). In order to avoid confusion, the court shall capitalize "Claim" when specifically referring to what the complaint might otherwise have designated "counts."

liberally should the court construe the applicability of Rule 23."); 3 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 7:17 (4th ed. 2002) ("[B]ecause Rule 23 itself requires that the court make a class determination 'as soon as practicable' and permits the court to alter or amend its order before the decision on the merits, many presumptions are fairly invoked to aid the court in reaching an early determination. Since Rule 23 is generally required to be liberally construed, these presumptions, arising at an early stage of the litigation, are invoked for the most part in favor of upholding the class.").

Doubts about whether to grant certification generally are resolved in favor of certification. *See, e.g.*, *Rankin v. Rots*, 220 F.R.D. 511, 517 (E.D. Mich. 2004) ("[W]hen in doubt as to whether to certify a class action, the district court should err in favor of allowing a class.") (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985)); *In re Vitamins Antitrust Litigation*, 209 F.R.D. 251, 258 (D.D.C. 2002) ("[C]ourts tend to favor class certification when in doubt."); *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 351 (E.D.N.Y. 1997) (Rule 23 should be given a broad rather than restrictive interpretation by the court so as to favor maintenance of class actions); *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 346 (S.D. Ga. 1996) ("Doubts regarding the propriety of class certification should be resolved in favor of certification.") *aff'd*, 117 F.3d 1433 (11th Cir. 1997); *see also* 3 Newberg, *supra*, § 9:46 ("Broad flexibility to modify an initial class ruling is built into Rule 23, so that courts have concluded that when any doubt exists concerning the propriety of class certification, it should be resolved in favor of upholding the class.").

## II.  DISCUSSION

### A.  Rule 23(a)

As noted above, Rule 23(a) consists of four requirements: (1) numerosity; (2) commonality;

(3) typicality; and (4) adequacy. The court concludes that the proposed class meets all four requirements.

### 1. Numerosity

The defendants concede that the proposed class meets the numerosity requirement. The court likewise finds that the requirement is met. While the exact number of participants who invested in the Baxter Common Stock Fund during the class period presently is not known, there is every reason to believe that the class will consist of hundreds and perhaps thousands. According to plaintiffs, in 2002, approximately 19,000 employees participated in the Plan. If just five percent of the participants invested in the Baxter Common Stock Fund, the class would include nearly 1,000 members. Pl.'s Mot. for Class Cert., at 6-7. This is more than sufficient to meet Rule 23(a)'s numerosity requirement.

### 2. Commonality

The threshold for commonality is not high. *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1990). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "[T]here need only be a single issue [of law or fact] common to all members of the class." *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 399 (N.D. Ill. 1987) (quoting *Edmondson v. Simon*, 86 F.R.D. 375, 380 (N.D. Ill. 1980)).

Rogers identifies several common questions, including: (1) whether defendants were plan fiduciaries; (2) whether the defendants breached one or more fiduciary duties by continuing to offer the Baxter Common Stock Fund as a Plan investment option when they knew or should have known that the stock was overvalued; and (3) whether the alleged breaches of fiduciary duty resulted in

damage to the Plan.  Pl.'s Mot. for Class Cert., at 7.  The defendants concede – and the court agrees – that the proposed class meets the commonality requirement.

### 3. Typicality

The typicality requirement is met if the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d 589, 595 (7th Cir. 1998) (internal quotation marks and citation omitted); s*ee also Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996) ("Typical does not mean identical, and the typicality requirement is liberally construed.").

Rogers' claims are based on the same legal theory as that of the putative class – viz., breach of fiduciary duty – and his claims arise from the same course of conduct as that of the other class members: the defendants' alleged failure prudently to manage the Plan's assets and their failure to disclose critical information to Plan participants about Baxter's true financial condition.

Defendants vigorously contest Rogers' typicality on several grounds.[2]  First, defendants contend that Rogers pursued a unique investment strategy of trading into and out of the Baxter Common Stock Fund throughout the class period, which allowed him at certain points to realize net gains.  Def.'s Resp., at 11-12, 16.  This, defendants argue, leaves Rogers vulnerable to the unique defense that, in his own case, Baxter stock in fact was a prudent investment.

---

[2] Many of the defendants' arguments with respect to typicality do not specifically address whether Rogers' claim arose from the same course of conduct as other class members' claims, nor whether he shares the same legal theory as the class members.  As challenges to typicality, therefore, these arguments are misplaced.  Still, these objections are relevant to whether the issues in question are susceptible to class-wide treatment and thus to whether class certification of this action is proper.  Putting aside the terminological question of whether the defendants' contentions should be analyzed under the rubric of typicality or another of Rule 23(a)'s requirements, the court addresses them here.

It is not clear why defendants regard this as a defense that might apply uniquely to Rogers. Indeed, defendants elsewhere argue that the question of whether each class member actually lost money by investing in the Baxter Common Stock Fund (and thus whether the investment was an imprudent investment for him or her) is one that applies to all class members' claims. *See* Def.'s Resp. at 12. Moreover, even if the defense were unique to Rogers, it would not follow that his claims are atypical. Rather, typicality is destroyed only when a unique defense becomes such a focus of litigation that it will "consume the merits" of the case. *See, e.g., In re Synthroid Marketing Litigation,* 188 F.R.D. 287, 291 (N.D. Ill. 1999) (citations omitted); *Gaspar*, 167 F.R.D. at 58. Nothing in the litigation thus far suggests that questions about Rogers' investment strategy or about the extent of his losses will overshadow litigation of the case's merits. *See, e.g., In re Louisiana-Pacific Corp.*, No. Civ. 02-1023-K1, 2003 WL 23537936, at *5 (D. Or. Jan. 24, 2003) (differences in representative's investment practices, including diversification, risk tolerance, access to information, and investment experience, did not prevent him from representing class); *cf. In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 465-66 (E.D. Pa. 2000) (plaintiffs who may have been subject to the unique defense that they held their stock even after learning of defendants' fraudulent activity were not atypical since "the focus of this inquiry is whether the named representatives rely on a similar legal theory as will the putative class, not whether the parties behaved identically in response to the alleged breaches of fiduciary duty").

Second, defendants argue that Rogers' claim is atypical because in order to prevail at trial, he will be required to show that the defendants made material misrepresentations to the class members. Def.'s Resp., at 14. The materiality of a statement, they argue, must be assessed in relation to the "total mix" of information available to investors. *Id*. (citing *Ballone v. Eastman*

*Kodak Co.*, 109 F.3d 117, 125-26 (2d Cir. 1997)). During his deposition, Rogers testified that he did not rely on Summary Plan Descriptions (SPDs), and that he instead consulted a variety of other information sources. As a result, defendants argue, Rogers' claims are not typical because they will require individualized proof as to whether the information he relied upon in making his investment decisions was provided by a fiduciary, and indeed whether he relied on any of the supposed misrepresentations alleged in the complaint.

While in some cases individual issues of materiality and reliance may present a bar to certification, as a general matter, such is not the case. *Riordan v. Smith Barney*, 113 F.R.D. 60, 65 (N.D. Ill. 1986) ("It is well established that individual issues of reliance do not thwart class actions."). Issues of reliance and materiality are problematic where defendants are alleged to have communicated with class members personally or individually. No such individual communications are at issue here. Rather, Rogers contends that the alleged misrepresentations were made to class members in general and on a class-wide basis. Courts have certified ERISA classes under much the same circumstances as those present here. *See, e.g.*, *Nelson v. IPALCO Enterprises, Inc.*, No. IP02-477CHK, 2003 WL 23101792, at *5-6 (S.D. Ind. 2003) ("[T]he fact that the defendants may be able to raise different defenses against the claims of different class members does not necessarily defeat typicality. Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members.") (internal quotations omitted); *In re Control Data Corp. Securities Litigation*, 116 F.R.D. 216, 221 (D. Minn. 1986).

Defendants make much of Rogers' deposition testimony that he did not rely on the Summary

Plan Documents ("SPD"s),[3] arguing that the SPDs are the source of the alleged misrepresentations in the case. But the court does not find Rogers' familiarity with the SPDs to be of especial importance. Rogers does not allege that the defendants' misrepresentations were to be found *only* in the SPDs. Rogers alleges that misrepresentations also were made in Baxter's Form 10-Q quarterly reports, Form 8-K special event reports, and form 10-K Annual Reports. Compl. ¶ 40.

Finally, defendants argue that Rogers' claims are atypical because he testified that at all relevant times he exercised independent control over his Plan investments. This, defendants argue, makes Rogers vulnerable to a defense under ERISA section 404(c), which provides that if a plan participant exercises independent control over investments in his or her account, then "no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c)(1)(B).

This argument is unconvincing for several reasons.[4] First, it is not clear why this defense should be thought unique to Rogers. Other class members also may have exercised independent control over their investments. If so, they, too, would be subject to the section 404(c) defense.

---

[3] Rogers apparently concedes that he did not read or rely on the SPDs; instead, he contends that he would have read the documents if he had received them. Pl.'s Reply, at 7-8.

[4] The court notes that the parties dispute whether an ERISA section 404 defense in fact will be available in this case. The merits of the parties' arguments on this issue are not properly before the court at this time and the court does not address the issue. *See, e.g.*, *In re Williams*, 231 F.R.D. 416, 421 (N.D. Okla. 2005) (noting that the question whether the ERISA plan in question fell under section 404(c) was a matter of dispute between the parties and was not properly before the court).

Secondly, even if the defense were unique to Rogers, it would not follow that his claims are atypical. As noted above, unique defenses destroy typicality only when they threaten to overshadow the merits of the case. At this stage of the litigation, the court is not convinced that the potential availability of a section 404(c) defense will overshadow litigation of the case's merits. Finally, the court notes that many other courts have rejected the same argument as advanced by the defendants here and have certified classes despite the potential applicability of a section 404(c) defense. *See, e.g.*, *In re Williams Companies ERISA Litigation*, 231 F.R.D. 416, 421 (N.D. Okla. 2005); *In re CMS Energy Erisa Litigation*, 225 F.R.D. 539, 543-44 (E.D. Mich. 2004).

### 4. Adequacy

Rule 23(a)(4) requires two separate inquiries: (1) whether the plaintiff's attorney is qualified, experienced, and able to conduct the proposed litigation; and (2) whether the plaintiff has interests antagonistic to those of the purported class members. *See generally Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 626 n.20 (1997).

The defendants do not dispute the ability of plaintiff's counsel to represent the class. Nor does the court find any reason to doubt that plaintiff's attorneys, who have substantial experience involving ERISA class actions, are qualified to conduct the proposed litigation.

Defendants argue that Rogers cannot adequately represent the class, however, because his deposition testimony contradicts the complaint on several fundamental points, including: (1) whether Baxter stock was an imprudent investment; (2) whether Baxter stock was artificially inflated; (3) whether the defendants "encouraged" and "promoted" investment in the Baxter Common Stock Fund; (4) whether Plan participants exercised independent control over their Plan accounts; (5) whether Rogers relied on the company's SPDs; and (6) whether Rogers seeks any non-monetary

relief. The court addresses these contentions *seriatim*.[5]

### a. Whether Baxter stock was an imprudent investment

Defendants first claim that Rogers admitted in his deposition testimony that Baxter stock in fact was a prudent investment during the class period. The defendants argue that this admission contradicts the complaint's allegation that Baxter stock was an imprudent investment during the *entire* class period. Def.'s Resp., at 15-17.

This argument requires a forced interpretation of the complaint. The paragraph of the complaint to which defendants cite does not contain an allegation regarding the "entire" class period; it alleges only that "Baxter common stock, in the form of the Baxter Common Stock Fund, was not

---

[5] The court also notes that the defendants' authorities are wide of the mark. In *Kline v. Wolf*, 88 F.R.D. 696 (S.D.N.Y. 1981), for example, the plaintiffs were deemed inadequate not because their deposition testimony contradicted the complaint, but because their testimony did not appear credible. *Id*. at 699-700. Similarly, in *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346 (E.D.N.Y. 1997), the plaintiff's deposition testimony was not only inconsistent with the complaint but also contradicted other statements he had made under oath, again giving rise to credibility concerns. *Id*. at 356 ("[t]he Court is concerned about this flip-flopping in the plaintiff's sworn testimony with regard to the crucial material facts in this case"). Finally, in *Turner v. Diversified Adjustment Serv., Inc.*, No.00 C 463, 2000 WL 748124, at *2 (N.D. Ill. May 31, 2000), the conflict between the class representative's deposition testimony and the complaint's allegations was only one of many reasons (including the fact that plaintiff described himself as "maybe retarded") for the court's finding that he could not adequately represent the class. *Id*. This is not to say that a plaintiff's ability to represent a class can never be challenged on grounds other than credibility when his deposition testimony conflicts with the complaint's allegations. But courts often find plaintiffs to be adequate representatives despite such conflicts. *See, e.g.*, *In re Dreyfus Aggressive Growth Mut. Fund Litigation*, No. 98CIV.4318(HB), 2000 WL 1357509, at *6-7 (S.D.N.Y. Sept. 20, 2000) (named plaintiffs in securities case could represent class where, although complaint alleged misrepresentation through written materials, representatives alleged reliance on oral communications); *Cruden v. Bank of New York*, Nos. 85 Civ. 4170 (JFK), 85 Civ. 4219 (JFK) and 85 Civ. 4570 (JFK), 1988 WL 9514, at *5 (S.D.N.Y. Feb. 1, 1988) (inconsistencies in plaintiffs' deposition testimonies were not significant enough to indicate that plaintiffs' interests were antagonistic to those of the class); *see also Cross v. Dickstein Partners, Inc.*, 172 F.R.D. 108, 113-15 (S.D.N.Y. 1997) (since there was "no serious inconsistency" between plaintiffs' deposition testimony and the complaint, plaintiffs were not atypical).

a prudent retirement investment during the Class Period." Compl. ¶ 55. The complaint need not be read as alleging that Baxter stock was an imprudent investment at each and every discrete moment of the class period. Consequently, there is no necessary incompatibility between the claim that Baxter stock was an imprudent investment during the class period and Rogers' testimony that the stock may have been a prudent investment on one or more particular dates.

### b. Whether Baxter stock was artificially inflated

Similarly, the court is unimpressed by defendants' attempt to find inconsistencies in Rogers' testimony regarding whether Baxter stock was artificially inflated. When asked whether Baxter stock was artificially inflated during the entire class period, he replied, "I can't say that with certainty. But I can say with certainty during parts of that time it obviously was." *Id*. at 121:22-122-3. Similarly, when asked whether "Baxter stock was artificially inflated at every moment from January 1st to the present time," Rogers replied, "Well, I'm certainly not comfortable with saying that every single minute of that stretch," but he went on to explain that the stock was inflated "when you break it down." Def.'s Ex. 1 at 119:15–120:2.

The complaint need not be read as claiming that Baxter stock's price was inflated "at every single moment" of the class period; and even if the complaint were read most naturally as making such an allegation, it is not clear that Rogers' testimony necessarily would conflict with the complaint: Rogers expressed uncertainty about whether the stock was inflated for the entire class period; he did not affirmatively state that the stock's value was *not* inflated for the entire period.

### c. Whether the defendants "encouraged" and "promoted" investment in the Baxter Common Stock Fund

Defendants point to a number of places in Rogers' deposition testimony where he states that

the defendants did not "encourage" or "advise" participants to invest in Baxter stock. Defendants argue that these assertions are at odds with the complaint. Rogers contends that his testimony is consistent with the complaint, since the complaint's theory of liability is not that the defendants actively advised participants to invest in Baxter stock, but rather that they breached their fiduciary duties merely by continuing to offer Baxter stock as an investment option while failing to disclose the company's financial difficulties.

Rogers' explanation is not entirely convincing. At various places, the complaint uses words such as "promote" and "encourage" to describe the fiduciaries' actions. *See, e.g.*, Compl. ¶¶ 1, 47, 56. If the complaint's theory does not presuppose that the defendants promoted or encouraged Baxter stock, its use of the terms "promote" and "encourage" is, at the very least, inapt. Nevertheless, the court does not find these issues to raise serious concerns about Rogers' ability adequately to represent the class.[6] To the extent that the complaint's theory is that the defendants are liable regardless of whether they actively promoted or encouraged Baxter stock, the complaint is consistent with Rogers' testimony. If it should later become clear that the complaint's theory requires active promotion and/or encouragement on the part of the defendants, the question of Rogers' representativeness can be revisited.

---

[6] In any event, Rogers' testimony that the defendants did not recommend that participants place all or even a majority of their assets into the Baxter Common Stock Fund is not inconsistent with the complaint. Even assuming that the complaint must be read as claiming that the defendants actively steered class members to invest in Baxter common stock, it does not follow that the defendants encouraged participants to invest *all* or *most* of their monies in that fund.

### d. Whether Plan participants exercised independent control over their Plan accounts

When asked whether he exercised independent "control with respect to selecting among the investments options offered in the Baxter [Plan]," Rogers replied that he did exercise such control. Def. App. Ex. 1 at 63:16-18. Defendants claim that this admission contradicts the complaint's allegation that Plan participants did not exercise individual control over their accounts. The court is not persuaded. As an initial matter, the court notes that the complaint makes varying allegations regarding participants' control over their accounts. While it is true that the complaint alleges in one place that the participants did not exercise control over their accounts, Compl. ¶ 51, the complaint clearly indicates in other places that the participants exercised some form of control over their accounts. *See, e.g.*, Compl. ¶ 26 ("At all times relevant to this Complaint, Participants directed the Plans to purchase investments from among the investment options available under the Plans and allocated them to their individual accounts."). To the extent that the defendants point to a real conflict, it is one that is endemic to the complaint *in toto*, not one that exists only between the complaint and Rogers' deposition testimony.

Moreover, the purported conflict may be merely apparent, for Rogers' reply brief claims that, based on Department of Labor regulations, plan participants are deemed to exercise control over their accounts only if they have received sufficient information to make informed investment decisions. Pl.'s Reply, at 4-5. Since the complaint alleges that the participants were not properly informed, they cannot be said under this theory to have exercised control over their accounts. As noted above, the merits of questions relating to ERISA section 404(c) are not before the court at this time. The court takes note of the argument solely for the purpose of addressing concerns about Rogers' ability to represent the class. The court sees no difficulty with Rogers' ability to represent

14

the class due to his testimony regarding participants' control over their accounts.

### e.    Whether Rogers relied on SPDs

This argument essentially restates defendants' earlier contention that, because Rogers did not rely on the SPDs, his claims are not typical of the class. As noted above, the complaint does not allege that the SPDs were the only source of the alleged misrepresentations and omissions. Rogers' reliance on the SPDs (or lack thereof) therefore has little to do with his ability adequately to represent the class.

### f.    Whether Rogers seeks non-monetary relief

Finally, defendants claim that Rogers cannot adequately represent the class because, while the complaint seeks both monetary and equitable relief, Rogers stated in his deposition testimony that he seeks only money damages. Specifically, Rogers was asked, "Are you seeking any relief other than money damages in this case?" and he replied, "No, just money damages. At this time I certainly can't think of any—any other." Def. App. Ex. 1 at. 111:12–15.

The court does not find this brief exchange to be especially troubling. Rogers' deposition did not address the issue of relief at great length. Taken in context, his answer is more an off-handed remark than a considered judgment. Nor is it always necessary for class representatives to be intimately familiar with the type of relief available or sought in a particular case. *See, e.g.*, *Liles v. American Corrective Counseling Services, Inc.*, 231 F.R.D. 565, 572-73 (S.D. Iowa 2005) (plaintiff could serve as class representative despite deposition testimony suggesting that she was not seeking money damages); *cf. Stanley v. U.S. Steel Co.*, No. 04-74654, 2006 WL 467908, at *5 (E.D. Mich. Feb. 27, 2006) (three named plaintiffs adequately represented the interest of the proposed classes despite the fact one plaintiff testified that did not bother to read the complaint before it was filed,

and did not understand the type of relief sought in the case). This is especially so where ERISA is concerned, given the disputes over whether, for example, monetary recovery is permitted in the form of equitable relief under section 502(a)(3).

Having considered all of these arguments, the court concludes that Rogers can adequately represent the proposed class. The court thus finds that Rogers meets all of Rule 23(a)'s requirements.

**B.      Rule 23(b)**

Rule 23(b) consists of three subsections. A case cannot be maintained as a class action unless at least one of the subsections is satisfied. Rogers argues that his claims under section 502(a)(2) may be certified under either Rule 23(b)(1) or 23(b)(2). He argues that his claims under section 502(a)(3) may be certified under all three subsections. The court first addresses certification of the section 502(a)(2) claims, and then considers certification of the 502(a)(3) claims.

**1.      Section 502(a)(2)**

The court finds that Rogers' section 502(a)(2) claims may be certified under Rule 23(b)(1).

**a.      Rule 23(b)(1)**

Rule 23(b)(1) allows for certification where:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

Rule 23(b)(1)(A) considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members. *See, e.g.*, *In re Ikon*, 191 F.R.D. at 466. In contrast to Rule 23(b)(3), Rule 23(b)(1) and 23(b)(2) do not require that potential class members be notified of the class action or that they be afforded an opportunity to opt out of the class. *See, e.g.*, *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005); *Bowe Bell + Howell Co. v. Immco Employees' Ass'n*, No. 03 C 8010, 2005 WL 1139645, at *1 (N.D. Ill. May 11, 2005) (citing *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139,* 216 F.3d 577, 580 (7th Cir. 2000)).

Defendants cite Supreme Court and Seventh Circuit decisions suggesting that, because notice and the opportunity to opt out are not required, certification under 23(b)(1) and 23(b)(2) is improper when money damages is the primary form of relief sought. For example, defendants cite *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), in which the Court stated that "mandatory class actions aggregating damages claims implicate the due process 'principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *Id.* at 846. But *Ortiz* was a mass tort suit; actions under ERISA section 502(a)(2) are entirely different, since such suits are representative by their very nature and the claim of any plan participant under section 502(a)(2) will necessarily dispose of other participants' claims, irrespective of whether or not a class is formally certified. Moreover, *Ortiz* specifically identified cases involving breach of fiduciary duty as paradigmatically suited for certification under Rule 23(b)(1). As the Court noted:

> Rule 23(b)(1)(B) speaks from a vantage point within the class, [from which the Advisory Committee] spied out situations where lawsuits conducted with individual members of the class would have the practical if not technical effect of concluding

the interests of the other members as well, or of impairing the ability of the others to protect their own interests. Classic examples of such a risk of impairment may, for example, be found in suits brought to reorganize fraternal-benefit societies, actions by shareholders to declare a dividend or otherwise to fix [their] rights, and actions charging a *breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries*, requiring an accounting or similar procedure "to restore the subject of the trust." In each of these categories, the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members.

*Ortiz*, 527 U.S. at 833-34 (internal quotations and citations omitted) (emphasis added); *see also In re Syncor Erisa Litigation*, 227 F.R.D. 338, 346 (C.D. Cal. 2005) (citing *Ortiz* in support of certification under Rule 23(b)(1)(B)).

Also misplaced is defendants' reliance upon Seventh Circuit cases such as *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139,* 216 F.3d 577 (7th Cir. 2000), and *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894 (7th Cir. 1999). Neither of those cases arose under ERISA; and each addressed certification only under Rule 23(b)(2), which provides for certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). That provision is inapplicable to claims under section 502(a)(2), which by definition seek monetary damages, not equitable relief.

The propriety of Rule 23(b)(1) certification is confirmed by the vast number of cases in which courts have certified ERISA classes pursuant either to Rule 23(b)(1)(A) or Rule 23(b)(1)(B), or both. *See, e.g.*, *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1352-53 (11th Cir. 2001) (district court abused discretion by certifying plaintiff's ERISA section 502(a)(2) claim under Rule 23(b)(3) instead of Rule 23(b)(1)); *In re Williams Companies ERISA Litigation*, 231 F.R.D. 416, 425 (N.D.

Okla. 2005) (certifying section 502(a)(2) class under both subsections of Rule 23(b)(1) as well as Rule 23(b)(2)) *In re Syncor*, 227 F.R.D at 347 (certifying ERISA class under 23(b)(1)(B)); *In re CMS Energy*, 225 F.R.D. at 546 (certification under Rule 23(b)(1)(A) and 23(b)(1)(B)); *In re Ikon*, 191 F.R.D. at 467 (certification under 23(b)(1)).[7]

Having rejected the defendants' arguments against certification under Rule 23(b)(1) generally, the court considers whether the proposed class meets the specific requirements of either 23(b)(1)(A) or 23(b)(1)(B).

### (i)      23(b)(1)(A)

A class may be certified under Rule 23(b)(1)(A) if the prosecution of separate actions by individual class members would create a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). As already noted, claims arising under ERISA section 502(a)(2) are representative by their very nature. Consequently, a decision with

---

[7] The court is not convinced by defendants' attempt to distinguish the many cases in which courts have certified ERISA classes under Rule 23(b)(1). For example, defendants argue that these cases involved only ESOP plans, in which defendants caused *every* plan member to hold an interest in the company's stock and recovery would therefore "not depend on facts regarding each plan participant's individualistic decision-making or reliance." Def.'s Resp., at 30. The court disagrees. In some of the cases, the exact nature of the plan is unclear; other cases involved ESOPs in addition to other types of ERISA plans that allowed employees individual control over investment decisions. *See, e.g.*, *In re Syncor*, 227 F.R.D. at 339-40 (describing separate parts of the plan, one of which allowed participants to "invest in any of nine available investment funds"); *In re CMS Energy*, 225 F.R.D. at 541 ("The Plan has two components which both allow for investment in CMS stock: 1) a 401(k) Savings Plan, where employees direct their contributions into an investment of their choosing ... and 2) an Employee Stock Ownership Plan (ESOP), where the employer matched contributions made by employees up to three percent of an employee's salary."); *In re Ikon*, 191 F.R.D. at 460 (plan was amended to include a self-directed component by which employees could direct their own contribution to any of several funds, while the employer's contribution was maintained as an ESOP).

respect to one Plan participant's claim necessarily implicates issues relevant to the adjudication of other participants' claims. Claims brought by more than one plan participant therefore might place incompatible demands on the defendants, requiring them to compensate the Plan under one ruling but not another.

Defendants claim that all of the elements of Rogers' case will require inquiry into individual questions, which will eliminate the possibility of inconsistent judgments. As noted in connection with its Rule 23(a) analysis, however, the court is unconvinced that this action will involve as many individual issues as the defendants contend. In any event, defendants' argument overlooks the fact that "the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs." *In re Ikon*, 191 F.R.D. at 465; *see also In re ADC Telecommunications ERISA Litigation*, No. Civ. 03-2989ADMFLN, 2005 WL 2250782, at *4 (D. Minn. Sept. 15, 2005) ("The focus of ERISA breach of fiduciary duty litigation is generally on the actions of the defendant, even when misrepresentations are alleged, individual inquiry into each of the plaintiffs is unnecessary."); *see also In re Williams*, 231 F.R.D. at 422.

Defendants argue that there is no risk of inconsistent judgments here since Rogers is the only plaintiff to have filed an ERISA suit arising out of the events in question. However, defendants cite no authority for the proposition that a risk of inconsistent judgments can be found only where multiple lawsuits are currently pending. The court therefore finds that certification under Rule 23(b)(1)(A) is appropriate.

### (ii) 23(b)(1)(B)

A class may be certified under Rule 23(b)(1)(B) if the prosecution of separate actions by

individual class members would create a risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). As noted above, by its very nature, a claim under ERISA section 502(a)(2) can only be brought on behalf of plan participants. Consequently, adjudications of one member's claim will necessarily affect the interests of other class members. If Rogers succeeds in requiring the defendants to compensate the Plan, the benefit will redound to all other participants who have a right to disbursements from the Plan. *See, e.g.*, *In re Syncor*, 227 F.R.D. at 346; *see also In re Ikon*, 191 F.R.D. at 466; *Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993).

Defendants argue that separate actions would not impair class members' ability to protect their interests, since the "mere fact that a decision for or against a class member may have some precedential effect does not substantially impair or impede the ability of the class members to protect their interests." Def.'s Resp., at 26-27. Without fuller explication, the court finds this argument unpersuasive. The court thus holds that certification of Rogers' section 502(a)(2) claim may be certified under Rule 23(b)(1)(B).

Having found that certification is proper pursuant to Rule 23(b)(1), the court does not address whether the suit may be certified under Rule 23(b)(2).

## 2. ERISA Section 502(a)(3)

In addition to seeking certification of his claims for damages under ERISA section 502(a)(2), Rogers also seeks injunctive relief under section 502(a)(3). The fact that Rogers' claims under section 502(a)(2) may be maintained as a class action does not necessarily mean that his claims for equitable relief also are entitled to certification. While section 502(a)(2) claims necessarily involve

plan-wide relief, claims under section 502(a)(3) are not representative in nature. Hence, the rationale for certification under 23(b)(1) (viz., that a plaintiff's suit will necessarily be dispositive of other Plan participants' claims) does not necessarily apply to section 502(a)(3) claims, and the importance of affording potential class members an opportunity to opt out is more readily apparent. Moreover, Rule 23(b)'s subsections are distinguished by virtue of the nature or effect of the type of relief sought. Since sections 502(a)(2) and 502(a)(3) provide for different forms of relief, the basis for certifying the former does not automatically carry over to the latter. It therefore is necessary to examine independently whether or not Rogers' section 502(a)(3) claims may be certified. *Cf. Lemon*, 216 F.3d at 581-82 (recommending the possibility of divided certification for portions of a case addressing equitable relief and portions addressing damages); *Jefferson*,195 F.3d at 898 (same).[8]

At this juncture, the court declines to certify Rogers' section 502(a)(3) claims under Rule 23(b)(1) or 23(b)(2). As already noted, neither subsection provides for notice and the opportunity

_____

[8] This task is made difficult by the inchoate character of Rogers' claims and the briefing in support of them. To begin with, Rogers has not described in great detail the precise form of equitable relief he seeks. Several of the complaint's Claims ask for restitution, but it is unclear whether this relief will pertain to him individually or to the class as a whole; and the complaint in several places also requests "appropriate equitable relief" of an unspecified nature. In addition, Rogers for the most part does not separately address certification of his 502(a)(2) claims and his 502(a)(3) claims. (Indeed, Rogers does not separate his 502(a)(2) and 502(a)(3) claims into separate Claims of the complaint. Rather, each Claim includes a request for monetary relief under 502(a)(2) and equitable relief under 502(a)(3)). Rogers also is not entirely clear about the provisions of Rule 23 under which he seeks certification. While the complaint purports to seek certification under each of Rule 23(b)'s subsections, it does not specifically indicate whether he seeks certification under all three subsections for *both* his 502(a)(2) and his 502(a)(3). Rogers' class certification briefs similarly are unclear. In his reply brief, he states for the first time that he "is willing to have his section 502(a)(3) claims certified under Rule 23(b)(3)." Pl.'s Reply, at 14. While the parties exchanged sur-replies on the latter question, however, the specific concerns about certification of the 502(a)(3) claims under other of Rule 23(b)'s subsections have been given little attention.

to opt out. Since the equitable relief Rogers seeks will not necessarily inure to the Plan as a whole and may involve some monetary component, the latter protections are necessary. Indeed, Rogers concedes as much. Pl.'s Reply Mot. Class Cert., at 14-15. Hence, if Rogers' section 502(a)(3) claims are to be certified at all, they should be certified under Rule 23(b)(3).

Plaintiffs seeking certification under Rule 23(b)(3) must show: (1) that common questions of fact or law predominate over questions affecting individual class members and (2) that a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). In considering Rule 23(b)(3)'s requirements, the court must review the substantive elements of the plaintiff's cause of action, the proof necessary, and the manageability of a trial on these issues. *See, e.g.*, *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. 295, 301 (N.D. Ill. 2005). Where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is inappropriate. *Id.*

Defendants argue that Rogers fails to meet the predominance requirement because his claims will require individual inquiry into the issues of materiality, reliance, and damages, as well as the application of the section 404(c) defense. The court disagrees. Most of Rogers' claims allege that the defendants breached their fiduciary duties not by virtue of representations made to Plan participants but rather by virtue of the way they managed or failed to manage the Plan. Claim I alleges that the defendants breached their duties of care, diligence, skill, and prudence by selecting of Baxter stock as an investment option; Claim II alleges that the defendants breached their duty of prudence by offering Baxter stock as an investment option; Claim IV alleges that the defendants breached their duties by acting in their own interests instead of the participants' interests; and Claim V alleges that Baxter failed to monitor the officials, employees, and committees charged with

administering the Plan.  Here, individual issues of materiality and reliance–if they arise at all–do not predominate over the common issues surrounding the defendants' conduct.

The court also finds, with respect to these claims, that the superiority requirement is met. In determining whether a class action is superior to trying cases separately, courts consider four factors: (1) the interest of class members in individually controlling the litigation; (2) the extent to which litigation already has been commenced by other members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the management difficulties likely to be encountered in maintaining the class action.  Fed. R. Civ. P. 23(b)(3).  All of these factors weigh in favor of certification here: there is no reason to think that other class members have an individual interest in controlling litigation with respect to these claims; although two securities fraud cases have been filed in connection with the events at issue here, there are no other ERISA cases arising out of the controversy; it would be vastly more efficient to concentrate litigation of these issues in a single forum, particularly given the high cost of litigation relative to the amount of each class member's recovery; and finally, litigation of the claims in question is not likely to present special problems of manageability.

With respect to Rogers' misrepresentation and nondisclosure claim, however, the court finds that the predominance requirement is not met.  Rogers' complaint itself alleges that the defendants' representations were material and that the Plan participants relied on them.  Compl. ¶¶ 64, 65. Rogers has not satisfied the court that these issues will not require individualized proof or that, if such proof is required, it will not overshadow the common issues presented by the claims.  Nor has Rogers assuaged the court's concerns about the need for individualized proof with respect to the issue of damages and the application of affirmative defenses.  It is true that these issues were not

found to preclude certification under Rule 23(a); but it is well settled that Rule 23(b)'s predominance requirement is far more demanding than Rule 23(a)'s commonality requirement. *See, e.g.*, *Murray*, 232 F.R.D. at 301 (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997)).[9]

The court thus concludes that Claims I, II, IV, and V, insofar as they are brought for equitable relief under section 502(a)(3), may be certified pursuant to Rule 23(b)(3). The court declines to certify Claim III insofar as it is brought for equitable relief under section 502(a)(3). *Cf. Piazza*, 273 F.3d at 1353 n.7 ("Although it was an abuse of discretion to certify § 502(a)(2) claims for relief to the plan under Rule 23(b)(3), no similar abuse of discretion would occur in the certification under that subsection of claims under § 502(a)(3) for individual remedies."); *In re Electronic Data Systems Corp.*, 224 F.R.D. at 630 (certifying under Rule 23(b)(1) plaintiff's claims for breach of duty of prudence, and declining to certify under Rule 23(b)(3) plaintiff's claims based on misrepresentation).

In conclusion, the court notes that a number of the questions presented were close ones. For example, questions about the extent to which Baxter stock may in fact have been a prudent investment for Rogers, especially in light of the fact that Rogers continues to hold Baxter stock, are cause for some concern. *See* Def.'s Resp., at 16-17. Moreover, while the defendants' objections to certification generally are unpersuasive when considered individually, they are considerably more

---

[9] Because the court finds that the predominance requirement is not satisfied with respect to this claim, the superiority requirement need not be considered. *See, e.g.*, *State ex rel. Forbes v. Southwestern Bell Telephone Co.*, No. 99-CV-720-S(H), 2002 WL 398796, at *7 (N.D. Okla. Mar. 4, 2002) (declining to consider superiority where predominance had not been shown); *Abby v. City of Detroit*, 218 F.R.D. 544, 550 (E.D. Mich. 2003) (declining to consider predominance where superiority had not been established).

powerful when taken together. The court notes that its "initial determination to certify a class is inherently tentative, and the court remains under a continuing obligation to review whether proceeding as a class is appropriate." *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2004 WL 1459486, at *4 (N.D. Ill. Jun. 28, 2004) (internal quotation marks omitted). If subsequent developments so warrant, the court may alter or amend its order as necessary pursuant to Fed. R. Civ. P. 23(c)(1)(C).

## CONCLUSION

For the foregoing reasons, the motion for class certification is granted in part and denied in part. The court certifies all of plaintiff's ERISA section 502(a)(2) claims pursuant to Federal Rule of Civil Procedure 23(b)(1)(A) and 23(b)(1)(B). The court certifies under Rule 23(b)(3) plaintiff's section 502(a)(3) Claims I, II, IV, and V. The court declines to certify plaintiff's section 502(a)(3) Claim III. The class certified is defined as:

> All current and former Participants in the Baxter International Inc. and  Subsidiaries Incentive Investment Plan ("the Plan"),  for whose individual accounts the Plan held shares of the Baxter Common Stock Fund at any time from January 1, 2001 to the present. Excluded from the Class are defendants, officers and directors of Baxter, members of defendants' immediate families, and the heirs, successors or assigns of any of the foregoing.

The court appoints David E. Rogers as class representative.

ENTER:

/s/_____
JOAN B. GOTTSCHALL
United States District Judge

Dated: March 22, 2006