IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID E. ROGERS, on behalf of )<br>Himself and a Class of Persons )<br>Similarly Situated, *et al.*, )<br> )<br>      Plaintiff, )<br> )<br>      v. )<br> )<br>BAXTER INTERNATIONAL INC., *et al.* )<br> )<br>      Defendants. ) | Case No. 04 C 6476<br><br>Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

This ERISA class action challenges defendants' decision to continue to offer company stock as a plan investment option. Defendants seek to propound four interrogatories on 14,511 individual plaintiff class members. Plaintiff opposes discovery on absent class members. For the reasons set forth below, Defendants' motion for leave to serve interrogatories on class members [Doc. 244] is denied.

**I.     Background**

Plaintiff David E. Rogers ("Rogers") represents a class of all current and former participants in the Subsidiaries Incentive Investment Plan and the Baxter Healthcare Corporation of Puerto Rico Savings and Investment Plan (the "Plans") for whose individual accounts of the Plans held shares of Baxter Common Stock at any time from January 1, 2001 to the present. The Plans were "defined contribution" or "individual account" plans within the meaning of ERISA, in that the Plans provided for individual account(s) for each participant and for benefits based solely upon the amount contributed to the participant's account(s), and any income, expenses, gains and losses, and any forfeitures of accounts

of other participants which could be allocated to such participant's accounts. Defendants are Baxter International, Inc. and the committees and managers responsible for the Plans. Rogers argues that defendants violated their fiduciary duties by allowing and encouraging participants to invest their retirement funds in Baxter common stock when they knew, or should have known, that the stock's value was inflated.

Rogers contends that defendants breached their fiduciary duties to participants of the Plans in five principal ways: (1) misrepresenting and failing to disclose material facts to the participants in connection with the administration of the Plans; (2) failing to exercise their fiduciary duties to the Plans and participants solely in the interests of the participants for the exclusive purpose of providing benefits to participants; (3) failing to manage the Plans' assets with the care, skill, prudence and diligence of a prudent person under the circumstances and imprudently failing to diversify the investments in the Plans so as to minimize the risk of large losses; (4) permitting the participants to continue to elect to invest their retirement monies in the Baxter Common Stock Fund when it was imprudent to do so and when the participants were not provided with timely, accurate and complete information concerning the company as required by applicable law; and (5) failing to appoint, inform, monitor and supervise the members of the committees which helped to administer the Plans. Rogers recently amended the complaint to allege that defendants violated ERISA's Section 407(a)(1) by holding more than 10% of Baxter Plan assets in Baxter stock.

## II. Discussion

Discovery from nonnamed class members is not warranted "as a matter of course." Brennan v. Midwestern United Life Ins. Co., 450 F.2d 999, 1005 (7th Cir. 1971); see also Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810 & n.2 (1985) (generally, "an absent class-action plaintiff is not required to do anything."). Discovery from absent class members may be allowed only in appropriate circumstances. Clark v. Universal Builders, 501 F.2d 324, 340-41 (7th Cir. 1974); Brennan, 450 F.2d at 1004. "Postcertification discovery directed at individual class members (other than named plaintiffs) should be conditioned on a showing that it serves a legitimate purpose . . . One of the principal advantages of class actions over massive joinder or consolidation would be lost if all class members were routinely subject to discovery." Manual for Complex Litigation, Fourth, § 21.41. A party may serve interrogatories on absent class members if the party shows that "the information requested is necessary to trial preparation and that the interrogatory is not designed 'as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants.'" Clark, 501 F.2d at 340 (citing Brennan, 450 F.2d at 1005). Defendants bear the burden of demonstrating the merits of their proposed discovery. Id.

### A.   Interrogatory No. 1 - **Class Members Assets Outside of the Baxter Plan**

Proposed interrogatory No. 1 seeks information concerning the size and composition of class members' overall investment portfolios during the class period, January 1, 2001 to the present. Defendants rely on two cases to support their view that discovery of information on absent class members' non-Baxter investments outside the Baxter Plan is

relevant to assessing whether the Baxter stock was a prudent investment option for class members, Steinman v. Hicks, 352 F.3d 1101 (7th Cir. 2003) and Summers v. State Street Bank & Trust, 453 F.3d 404 (7th Cir. 2006).  Defendants say that these cases "make clear that whether the Baxter Common Stock Fund was and is a prudent investment option cannot be evaluated in isolation.  Instead, such a determination requires consideration of the size and composition of individual class members' overall investment portfolios during the class period."  Defs' Motion at 3.

An ERISA trustee has a fundamental duty to behave prudently in managing the trust's assets.  Armstrong v. LaSalle Bank Nat'l Ass., 446 F.3d 728, 732 (7th Cir. 2006). ERISA requires plan fiduciaries to select and monitor investment options "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S. C. § 1104(a)(1)(B).  Section 404 also includes a general requirement of diversification of plan assets.  Id. § 1104(a)(1)(C). "The duty to diversify is an essential element of the ordinary trustee's duty of prudence, given the risk aversion of trust beneficiaries."  Armstrong, 446 F.3d at 732.  In determining whether a fiduciary exercised prudence in selecting and retaining available investment options, a court should consider the totality of the circumstances, including, but not limited to "the plan structure and aims, the disclosures made to participants regarding the general and specific risks associated with investment in company stock, and the nature and extent of challenges facing the company that would have an effect on stock price and viability." DiFelice v. U.S. Airways, 2007 WL 2192896, at *5 (4th Cir. Aug. 1, 2007).

Neither Steinman nor Summers persuades the Court that information on class members' investment holdings outside the Baxter Plan bears on the question of whether defendants breached their fiduciary duties in this case by continuing to offer the Baxter Common Stock Fund despite their knowledge that Baxter stock was overvalued. Steinman and Summers involved ESOPs (employee stock ownership plans). An ESOP is nondiversified by definition because "the very purpose of an ESOP is to invest in a single stock, that of the employer of the ESOP's participants." Summers, 453 F.3d at 406, 410. "A directed trustee appointed under an ERISA plan does not have [the duty to diversify the trust assets] because the very purpose of an ESOP is to invest in a single stock, that of the employer of the ESOP's participants." Id. at 406. An ESOP trustee's duty of prudence

> demands an even more watchful eye, diversification not being in the picture to buffer the risk to the beneficiaries should the company encounter adversity. There is a sense in which, because of risk aversion, an ESOP is imprudent per se, though legally authorized. This built-in 'imprudence' (for which the trustee is of course not culpable) requires him to be especially careful to do nothing to increase the risk faced by the participants still further.

Armstrong, 446 F.3d at 732. Even though the trustee of an ESOP does not have a general duty to diversity, such a duty can arise in "special circumstances." Id.

The Steinman and Summers courts elaborated on the "special circumstances" which could require diversification of an ESOP's holdings. In Steinman, the Seventh Circuit noted that if the "ESOP was [the employees'] principal retirement asset . . . and was entirely invested in the stock of their employer . . ., and their employer was bought in a stock-for-stock deal-so that all the assets of the ESOP became stock in the acquirer by a company that had a much higher debt-equity ratio than their (former) employer and as a result its stock price was much more volatile and its bankruptcy risk greater," then the duty of

prudence could require diversification of an ESOP's holdings. Steinman, 352 F.3d at 1106. In Summers, "[t]he question was whether the participants in the ESOP had a remedy against the ESOP trustee for the trustee's failure to dispose of the employer's stock as the market price of the stock fell (ending at zero)." Harzewski v. Guidant Corp., 489 F.3d 799, 807 (7th Cir. 2007). The Seventh Circuit held that "the trustee could not be faulted for failing to second-guess the stock market, and while it could be faulted for failing to recognize (and, by diversifying, reduce) the risk that the drop in price was imposing on the ESOP's participants because of the increase in the employer's debt-equity ratio brought about by the fall in its market value, the plaintiffs had never sought to 'determine the point at which the ESOP trustee should [have sold] in order to protect the employee-shareholder against excessive risk.'" Id. The Summers court explained that the source of the duty to diversify an ESOP is:

> the excessive risk imposed on employee-shareholders by the rise in the debt-equity ratio of the employer's stock as a result, in the example given in Steinman, of a merger and in our case of plummeting stock price. How excessive would depend in the first instance on the amount and character of the employees' other assets, for, as we have already indicated, it is the riskiness of one's portfolio, not of a particular asset in the portfolio, that is important to the risk-averse investor.

Summers, 453 F.3d at 411.

Steinman and Summers thus instruct that a plaintiff may introduce evidence that there may have been a point where an ESOP trustee should have sold an employer's stock in order to protect the employee-shareholders from "excessive" risk.[1] By definition, an

---

[1] Summers warns, however, that "determining the 'right' point, or even the range of 'right' points, for an ESOP fiduciary to break the plan and start diversifying may be beyond the practical capacity of the courts to determine." Summers, 453 F.3d at 411.

allegation that a fiduciary failed to protect employee-shareholders from "excessive" risk necessarily depends on the participants' other investments. "Excessive" risk cannot be judged in isolation, but must be compared to the amount and character of the participants' other assets. It makes no sense to argue that the risk was "excessive" without knowing the amount and character of the participants' other assets. "[W]hat is important is the diversification of the employee's entire asset portfolio . . . rather than whether an individual asset is diversified." Summers, 453 F.3d at 411. As Judge Posner explained,

> The tension between the goal of protection against risk and the goal of a portfolio dominated by a single stock is not acute if the participants in the ESOP have adequate sources of income or wealth that are not correlated with the risk of that stock, so that the ESOP is not their primary financial asset. But if they don't have substantial other wealth the goals cannot be reconciled, though they can be compromised by requiring fiduciaries to begin diversifying the ESOP's assets at the point at which an increase in the riskiness of the assets, had it been foreseen, would have induced the creators of the ESOP either to have not created it at all or to have required at least partial diversification.

Id. at 410.

This case is not about the "excessive risk" alternative theory of liability suggested by the Steinman and Summers courts for evaluating the prudence of a trustee in an ESOP. Because the Plans in this case were not ESOPs, defendants had a general duty to diversify "the investments of the plan[s] so as to minimize the risk of large losses unless, under the circumstances, it [was] clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)C). Defendants also point out that Baxter's debt-to-equity ratio remained stable throughout the class period, which is unlike the rise in the debt-equity ratio of the employer's stock in the examples given in Steinman and Summers. Defs' Reply at 6. Rogers does not argue that "special circumstances" existed which required diversification of an underdiversified ESOP

contrary to the terms of a plan to ward off "excessive risk." Rather, Rogers' theory is that defendants knew or should have known based on nonpubic information that the price of Baxter stock was artificially inflated because of various problems facing Baxter, including problems in its Renal Biosphere and Latin American operations, but imprudently continued to allow and encourage participants to invest in Baxter stock and allowed the over-allocation of assets into Baxter stock when they could have stopped offering Baxter common stock as an investment option under the Plans before the overvaluation was publicly released and its price "declined sharply." Defendants have not adequately established how Rogers' theory of failure to diversify so as to minimize the risk of large losses to the Plans implicates the participants' entire asset portfolio. Because Rogers is not arguing that the Baxter stock price drop imposed an "excessive" risk on participants in an ESOP setting, Steinman and Summers does not demonstrate that discovery of information regarding participants' investments outside the Baxter Plan is necessary to defendants' trial preparation.[2]

Defendants also assert that information regarding class members' investment portfolios during the class period might support decertification of the class. Defendants rely on Judge Gottschall's conclusion in certifying the class "that a number of the questions presented were close ones. For example, questions about the extent to which Baxter stock may in fact have been a prudent investment for Rogers, especially in light of the fact that Rogers continues to hold Baxter stock, are cause for some concern." Rogers, 2006 WL

---

[2] The Court makes no determination here of whether participants' assets in other company-sponsored plans may be considered in evaluating the prudence of a particular investment option.

794734, at *13. Defendants point out that Judge Gottschall correctly noted that courts have a "continuing obligation to review whether proceeding as a class is appropriate." Id. Defendants' suggestion that discovery of 14,511 absent class members holdings in 15 different types of investments on a quarterly basis since 2001 to the present for purposes of demonstrating atypicality based on class members' divergent personal investment needs, objectives, and risk tolerances in a decertification context is not a reasonable approach and does not meet the Clark and Brennan test for absentee class member discovery.

**B.    Interrogatories Nos. 2 through 4 – Materials or Advice on Which Class Members Relied on in Deciding to Invest in Baxter Stock**

In addition to the imprudence claim, Rogers alleges misrepresentation and nondisclosure of material information in the Summary Plan Descriptions ("SPDs") and in Baxter's filings with the Securities and Exchange Commission, which the SPDs incorporated by reference. Proposed interrogatories Nos. 2 through 4 request information regarding the materials or advice on which class members relied on in deciding to invest in the Baxter Common Stock Fund during the class period. Defendants' second and fourth interrogatories seek, respectively, an explanation of the reasons that the absent class members chose to allocate their 401(k) contributions in Baxter stock and a list of the Baxter SEC filings that each class member reviewed from 2001 to the present. Proposed interrogatory No. 3 asks class members to identify and explain misrepresentations and omissions by defendants concerning Baxter stock that the absent class members believe should have been disclosed and what the misrepresentations and omissions caused the absent class members to do or refrain from doing.

### 1. Detrimental Reliance

Defendants argue that they are entitled to conduct discovery to determine whether class members in fact relied on the SPDs and SEC filings or whether they relied on other information in deciding to invest in the Baxter Common Stock Fund. Defendants contend that one of the essential elements of a claim for breach of fiduciary duty based on an alleged misrepresentation is detrimental reliance by the plaintiff on the misrepresentation. Rogers insists that the information sought in these interrogatories is not necessary for defendants' trial preparation because detrimental reliance is not an element of a claim of fiduciary misrepresentation.

Taking defendants' arguments regarding individualized proof of materiality and reliance into account, the district court declined to certify a § 502(a)(3) claim of fiduciary misrepresentation pursuant to Rule 23(b)(3) in this case. Rogers, 2006 WL 794734 at *12-13. The district court analyzed whether common questions of fact or law predominate over questions affecting class members in deciding whether to certify a class under Rule 23(b)(3) with respect to Rogers' misrepresentation claim. Id. at *12. The district court refused to certify a class claim for fiduciary misrepresentation under § 502(a)(3) pursuant to Rule 23(b)(3) because it was not satisfied that issues of materiality and reliance will not require individualized proof that will not overshadow the common issues presented by the claim. Id. at *13. Despite defendants' arguments to the contrary, the district court held that individual questions of materiality and reliance did not preclude class certification of the section 502(a)(2) fiduciary misrepresentation claim pursuant to Rule 23(b)(1). As Judge Gottschall noted, claims arising under section 502(a)(2) are representative by nature and any recovery involves plan-wide relief. Id. at *10.

Because Rogers' misrepresentation claim is brought on behalf of the Plan, this Court is not convinced that class discovery regarding individual issues of reliance is necessary for defendants' trial preparation. See Smith v. Aon Corp., 238 F.R.D. 609, 616 (N.D. Ill. Nov. 29, 2006) (stating "plaintiffs appropriately bring this action in a representative capacity, seeking Plan-wide relief on behalf of the Plan itself. No issues relative to any individual Plaintiff are presented, and individual Plaintiffs are not required to establish detrimental reliance."); see also Brieger v. Tellabs, Inc., 2007 WL 2712106, at *9 (N.D. Il. Sept. 19, 2007) (Kennelly, J.) (stating "[t]he Seventh Circuit has never expressly held that detrimental reliance is an element of an ERISA breach of fiduciary duty claim."). Even if individual detrimental reliance is relevant to the representative fiduciary misrepresentation claim, discovery regarding such issue is not necessary at this time. Individual reliance information will not help resolve the common questions involved in Rogers' representative breach of fiduciary duty claim based on misrepresentation: (1) whether defendants were plan fiduciaries; (2) whether defendants breached their fiduciary duties by misrepresenting and failing to disclose material facts to the participants in connection with the administration of the Plans; and (3) whether the alleged breaches of fiduciary duty resulted in damage to the Plans. See Brieger v. Tellabs, Inc., 2007 WL 2712106, at *9 (stating elements for breach of fiduciary duty claim). The alleged misrepresentations in this case were made to class members in general and on a class-wide basis. Rogers, 2006 WL 794734, at *4. Proof of these common questions focuses primarily on defendants' conduct, not the actions of individual participants, and such evidence is common to all class members. Rogers, 2006 WL 794734 at *10 (noting that the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs). Defendants have not met their

burden of demonstrating that proof of the specific circumstances that led each class member to buy Baxter common stock is needed before the common issues of the representative fiduciary misrepresentation claim are resolved.

### 2. ERISA § 404(c) Defense

Defendants also contend that proposed interrogatories Nos. 2, 3, and 4 ask for information related to defendants' affirmative defense under ERISA § 404(c). "ERISA section 404, which sets forth the standard of care for a fiduciary, provides that no fiduciary shall be liable for any loss which results from a plan participant or beneficiary's exercise of control in participant-directed plans." Jenkins v. Yager, 444 F.3d 916, 923 (7th Cir. 2006); 29 U.S.C. § 1104(c). Specifically, Baxter argues that "[b]ecause members of the [] class were not required to invest their own or Baxter's matching contributions in the Baxter Common Stock Fund, but rather could elect to invest in any of the funds offered, defendants are entitled to pursue the Section 404(c) defense based on the particular facts and circumstances of each participant's investment elections." Defs' Memo. In Opp. to Class Cert. at 15.

Citing the Fourth Circuit's decision in DeFelice, Rogers has raised the threshold issue of the applicability of defendants' § 404(c) defense to this case. Judge Gottschall noted but declined to resolve the parties' dispute regarding the availability of the section 404 defense when she certified the class. Rogers, 2006 WL 794734, at *5 n.4. Since the district court's March 22, 2006 opinion on class certification, the Fourth Circuit decided an ERISA class action alleging a breach of fiduciary duty in retaining a company stock fund as an investment option for participants despite the employer's precarious financial conditions. DeFelice v. U.S. Airways, Inc., 2007 WL 2192896 (Aug. 1, 2007). The

-12-

DeFelice court stated that section 404(c)'s safe harbor "does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k) plan." Id. at *5 n. 3.  Rather, "'limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a *fiduciary function*,' and 'responsible plan fiduciaries are . . . subject to ERISA's general fiduciary standards in initially choosing or continuing to designate investment alternatives offered by a 404(c) plan.'" Id.[3]  The Fifth Circuit recently reached a contrary conclusion regarding the applicability of ERISA § 404(c) to participant-directed accounts in an ERISA stock drop case.  See Langbecker v. Electronic Data Systems Corp., 476 F.3d 299 (5th Cir. 2007) (reversing district court's finding that ERISA § 404(c) is inapplicable to a suit on behalf of the plan as a whole alleging fiduciary duty breach consisting of imprudent plan management and selection of investment options under ERISA § 502(a)(2)).[4]

As noted earlier, class discovery is not warranted "as a matter of course."  Absent some guidance from the district court that defendants' ERISA 404(c) defense is applicable here, this Court is uncomfortable overriding this presumption and allowing defendants to propound interrogatories on 14,511 absent class members.  Additional guidance and insight regarding ERISA's 404(c) defense may also be forthcoming from the Seventh Circuit.  An appeal pursuant to Federal Rule of Civil Procedure 23(f) has been granted by

---

[3] Roger also argues that the 404(c) defense is inapplicable to this case because material information was withheld from participants.

[4] Even under the Fifth Circuit's approach, § 404(c) appears to bear on the issue of "potential recovery." Langbecker, 476 F.3d at 312.  "A classwide claim may be stated, but the potential recovery is limited to those class members whose claims have not prescribed." Id.  After common liability issues are litigated, the necessity of discovery regarding individual issues of participants' control over their investments could be addressed.

-13-

the Seventh Circuit in a stock drop case "holding that a defense under ERISA § 404(c) does not defeat the commonality and typicality requirements for class certification under Rule 23(a)(2) and (a)(3) in a class action asserting ERISA breach of fiduciary duty with respect to a 401(k) individual account plan." Spano v. Boeing Co., 2007 WL 2688456, at * 2 (S. D. Ill. Sept. 10, 2007); see Lively v. Dynegy, Inc., 2007 WL 685861 (S.D. Ill. March 2, 2007). Without some indication from the district court (or the Seventh Circuit) regarding the applicability of an ERISA § 404(c) defense to a fiduciary's decision to select and maintain certain investment options within a participant-directed 401(k) plan, the Court is unwilling to find that discovery of absent class members based upon this defense serves a legitimate purpose and is appropriate at this time.

## III.  Conclusion

For these reasons, defendants' motion for leave to serve interrogatories on class members is denied.

**E N T E R :**

*Nan R. Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated:  October 4, 2007**