# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID E ROGERS, on Behalf of himself, and a Class of Persons Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | Case No. 04 C 6476 |
| v. ) ) | Judge Joan B. Gottschall |
| BAXTER INTERNATIONAL, INC., et al., ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff David E. Rogers brings this class action suit against Baxter International, Inc. ("Baxter") and other 401(k) fiduciaries for violating certain provisions of the Employee Retirement Income Security Act ("ERISA"). Rogers alleges that the defendants allowed and encouraged participants to invest their retirement funds in Baxter common stock when they knew, or should have known, that the stock's value was inflated at various periods from 2002 to 2004. Rogers also contends that the defendants erroneously permitted the fund to become overly concentrated in Baxter common stock; ERISA prohibits certain plans from investing more than 10% of total market value in employer securities and employer real property. 29U.S.C. § 1107(a)(2).

The defendants previously moved to dismiss the complaint on several grounds pursuant to Fed. R. Civ. P. 12(b)(6), a motion which was granted in part and denied in part on February 22, 2006. *Rogers v. Baxter Int'l, Inc. ("Rogers I")*, 417 F. Supp. 2d 974 (N.D. Ill. 2006). An interlocutory appeal was taken on the question of whether Rogers had a private cause of action under ERISA; the Seventh Circuit affirmed that he did. *Rogers v. Baxter Int'l, Inc. ("Rogers II")*, 521 F.3d 702, 705 (7th Cir. 2008) ("All we hold today is that participants in defined-contribution plans

may use § 502(a)(2), and thus § 409(a), to obtain relief if losses to an account are attributable to a pension plan fiduciary's breach of a duty owed to the plan.").

The defendants now move for partial judgment as a matter of law under Rule 12(c) of the Federal Rules of Civil Procedure. The defendants seek judgment on two parts of the complaint. First, they seek judgment on the breach of fiduciary duty claims arising out of the Baxter common stock's drop in value occurring in July of 2004; the defendants contend that Rogers' pleading is insufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), or alternatively that the drop in price, and the mismanagement that precipitated it, were so minor that no violation of any fiduciary duty can be found. Second, the defendants seek judgment on the alleged 10% overinvestment violation. The defendants' motion is granted regarding the July 2004 events, and denied regarding the 10% overinvestment violation.

## I.     Claims Related to July 2004 Events

Rogers contends that the defendants violated their fiduciary responsibilities on multiple occasions from 2002 to 2004. *See* 2d Consol. Class Action Compl. ("Compl.") ¶ 1 ("Likewise, in 2003 and early 2004, defendants knew or should have known that Baxter was concealing the improper recognition of revenues and maintenance of incorrect provisions of bad debts relating to Baxter's Brazilian operations."), ¶ 46, ¶ 64. The complaint goes into specific detail regarding events occurring in July 2002, and July 2004, but Rogers alleges he has uncovered through discovery additional improprieties occurring in 2003. Only the events occurring in and around July 2004 are relevant for this order. Namely, in July 2004, Baxter announced that it would restate (and decrease) previously reported financial results to correct for a fraud that had been occurring at its Brazilian subsidiary ("2004 Restatement"). Shortly after the 2004 Restatement was publicized, the value of the Baxter common stock fell by $1.48 a share.

The defendants contend that Rogers' complaint does not sufficiently allege that the defendants had knowledge of the Brazilian fraud that gave rise to the 2004 Restatement, as is now required under *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) and *Twombly,* 550 U.S. 544. Under ERISA, Rogers must show a breach of a fiduciary duty. *Rogers II*, 521 F.3d at 705 ("*LaRue v. DeWolff, Boberg & Associates, Inc.*, --- U.S. ----, 128 S.Ct. 1020 . . . (2008), holds that § 502(a)(2), and thus § 409(a), may be used by the beneficiary of a defined-contribution account that suffers a loss, even though other participants are uninjured by the acts said to constitute a breach of fiduciary duty."). A fiduciary duty can be breached if the fiduciary ignores and declines to investigate "red flags" of warning; the fiduciary need not have literal knowledge of an impending problem. *Pugh v. Tribune Co.*, 521 F.3d 686, 700 (7th Cir. 2008). Thus the question under *Twombly* is whether it is plausible, based on the facts alleged in the complaint, that the defendants were aware of and ignored red flags related to the Brazilian operation.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "Determining the plausibility of a claim is 'a context-specific task that requires [us] to draw on [our] judicial experience and common sense.' '[N]aked assertions devoid of further factual enhancement' will not do." *Brown v. JP Morgan Chase Bank*, No. 08-1890, 2009 WL 1761101, at *1 (7th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950) (unpublished) (modifications in original).

Rogers contends the defendants were, or should have been, on notice of possible improprieties in Brazil because of their positions within Baxter (as CEO and CFO) and because of the existing internal reporting systems within Baxter. Compl. ¶ 42. These allegations miss the mark. "A conclusory statement that all defendants should have known specific facts about a

3

company [because of their position within the company] is generally insufficient to state a claim; it must be alleged that each defendant was in a position to know or learn of the information." *Pugh*, 521 F.3d at 701. Thus, the defendants' status as CEO and CFO is not enough. Rogers nevertheless argues that *Pugh* is inapplicable because a method of discovery has been alleged—Baxter's internal reporting systems. The court cannot agree that this difference is material. Rogers has not alleged any facts from which this court can infer that the internal reporting system should have put defendants on notice of the problems in Brazil. The existence of the internal reporting mechanisms makes notice of the problems in Brazil *possible*, but it does not make notice plausible.

Discovery in this case has been on-going, and Rogers points to new facts which he contends support his argument. Assuming *arguendo* that the court may consider these facts,[1] Rogers' claim still fails the plausibility standard. Rogers points out that Baxter was undertaking an audit in Brazil in 2002 as a result of a $4,000,000 expense "related to aged receivables, advances not timely recorded as expenses, and dialysis equipment." *See* Rogers Revised Resp. at 12 (Doc. No. 348). Rogers also points to evidence that Baxter assigned a risk assessment to its different operations, and that Brazil was ranked as a higher risk in 2004, and that it was subject to yearly audits (as opposed to less frequent audits in other locations). These facts do not suggest that the defendants had a duty to investigate the propriety of the Brazilian operations; to the contrary, they suggest that Baxter itself was aware of prior problems (in 2002) and was taking steps to prevent future problems (by conducting more frequent audits). These facts are too general to show that any of the defendants should have been aware of, and investigated, red flags prior to the disclosure of problems in Brazil in 2004.

---

[1] Given the language of *Iqbal* and *Twombly*, it would appear necessary to amend the complaint to insert these facts if the complaint could not survive without them.

The defendants' motion for judgment related to the July 2004 events in Brazil is granted.

**II.    ERISA Ten Percent Rule**

ERISA § 407(a)(2) prohibits fiduciaries of certain 401(k) plans from allowing more than 10% of the plan's assets to be held in the employer's stock. 29 U.S.C. § 1107(a)(2).[2] However, a plan which "explicitly provide[s] for acquisition and holding" of employer securities is exempt from the 10% limitation. 29 U.S.C. § § 1107(b)(1),[3] (d)(3)(B).[4] The parties dispute whether the plan at issue here includes the necessary explicit provision that would except it from the 10% rule during the years 2002 and 2003, the time-period when more than 10% of the plan's assets were invested in Baxter common stock.

The investment plan has been modified periodically over time. Rogers concedes that the 1992 version explicitly provided for investing in Baxter common stock, as did the 2004 version. Rogers contends that the 1997 plan did not contain this explicit provision, and that the 1997 plan was in effect in 2002 and 2003.

The defendants do not argue that the 1997 plan explicitly permitted investment in the Baxter common stock. Instead, the defendants point to a trust agreement that is incorporated into the 1997 plan. In particular, the trust agreement states:

---

[2] "A plan may not acquire any qualifying employer security or qualifying employer real property, if immediately after such acquisition the aggregate fair market value of employer securities and employer real property held by the plan exceeds 10 percent of the fair market value of the assets of the plan." 29U.S.C. § 1107(a)(2).

[3] "Subsection (a) of this section shall not apply to any acquisition or holding of qualifying employer securities or qualifying employer real property by an eligible individual account plan." 29 U.S.C. § 1107(b)(1).

[4] "[A] plan shall be treated as an eligible individual account plan with respect to the acquisition or holding of qualifying employer real property or qualifying employer securities only if such plan explicitly provides for acquisition and holding of qualifying employer securities or qualifying employer real property (as the case may be)." 29 U.S.C. § 1107(d)(3)(B).

5

> 3. RESPONSIBILITIES RELATED TO INVESTMENT FUNDS AND INVESTMENT ACCOUNTS
> 3.1 Investment Funds. . . . .
> 　　　If, and to the extent specifically authorized by the Plans and directed by the Investment Committee, the Trustee shall establish one or more Investment Funds all of the assets of which shall be invested in securities which constitute "qualifying employer securities" or "qualifying employer real property" within the meaning of Section 407 of ERISA.
>
> . . . .
>
> 4. POWERS OF THE TRUSTEE
> 4.1 Investment Powers of the Trustee. The Trustee shall have and exercise the following powers and authority (i) over Investment Accounts where it has express investment management discretion as provided in Section 3.4 or (ii) upon direction of the Investment Managers of an Investment Account or (iii) upon direction of the Investment Committee:
> . . .
> 　　　(b)　To acquire and hold qualifying employer securities and qualifying employer real property, as such investments are defined in Section 4078(d) of ERISA.

1997 Trust Agmt. The defendants argue that this language "explicitly provide[s] for acquisition and holding" of employer securities. This argument is erroneous. Although sections 3.1 and 4.1 appear to conflict over precisely what conditions precedent must be met before the fund can acquire and hold employer securities, both sections contain a condition precedent, and the defendants point to no evidence at this stage that the conditions precedent have been satisfied. Section 3.1 requires specific authorization by the Plans and direction by the Investment Committee. Section 4.1 requires either (i) authorization from Section 3.4 of the trust agreement, (ii) direction of the Investment Managers of an Investment Account, or (iii) direction of the Investment Committee. Because the court cannot presently conclude that these conditions precedent were satisfied, Rogers has stated a claim that the fund violated the ten-percent rule. *See* 29 U.S.C. § 1107(a)(2) (ten percent rule); § 1109 (providing fiduciary liability for violations of subchapter).

　　The defendants' motion for judgment on the pleadings on the ten percent claim is denied.

6

ENTER:

      /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 28, 2009