UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID E. ROGERS, ) | |
| ) | Case No. 04 C 6476 |
| Plaintiff, ) | |
| v. ) | Judge Joan B. Gottschall |
| ) | |
| BAXTER INTERNATIONAL INC. et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION & ORDER**

### I. BACKGROUND

Plaintiff David E. Rogers filed this class action lawsuit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., against a number of defendants including Baxter International Inc. ("Baxter"), Harry M. Jansen Kraemer, Jr., Baxter's former CEO, and Brian P. Anderson, Baxter's former CFO. The defendants ultimately prevailed, and Baxter, Kraemer, and Anderson now ask the court to award them their costs in this litigation.

### II. ANALYSIS

Anderson has filed a motion asking for $190,580.95 in costs, and Baxter and Kraemer have filed a motion for $306,251.26 in costs.

### A. Standard for Awarding Costs Under ERISA

In support of their motions, defendants cite Federal Rule of Civil Procedure 54(d)(1). The rule provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. . . ." Under the rule, a prevailing party is presumptively entitled to an award of costs, but the district court retains

discretion to decide on a case-by-case basis whether the award is appropriate.[1] *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997). The court's discretion is not limitless, and, "[g]enerally, only misconduct by the prevailing party worthy of a penalty or the losing party's inability to pay will suffice to justify denying costs." *Id*.

Rogers contends, however, that the fee-shifting provision in ERISA trumps Rule 54, and that ERISA sets a higher bar for awarding costs. ERISA provides: "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Although the statute, by its terms, gives the court discretion, Seventh Circuit cases discussing the propriety of an award of attorney's fees under § 1132(g)(1) have constrained that discretion by permitting fee-shifting only when the loser's position did not have "substantial justification." *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 670 (7th Cir. 2007). To be substantially justified means "something more than nonfrivolous, but something less than meritorious." *Stark v. PPM America, Inc.*, 354 F.3d 666, 673 (7th Cir. 2004).[2] Rogers argues that the "substantially justified" standard also applies to awards of costs.

---

[1] The parties do not dispute that defendants are the "prevailing parties."

[2] The Seventh Circuit has actually employed two related tests in assessing requests for attorney's fees under § 1132(g)(1). *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998). In addition to the "substantially justified" test, courts have also employed a five-factor test looking to: "1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions." *Id.* (citing *Filipowicz v. Am. Stores Benefit Plans Comm.*, 56 F.3d 807, 816 (7th Cir. 1995)). The five-factor test, however, is geared more toward cases where the plaintiff is the prevailing party. *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 829 (7th Cir. 1984), overruling on other grounds recognized by, *McCarter v. Retirement Plan for Dist. Managers of Am. Family Ins. Grp.*, 540 F.3d 649 (7th Cir. 2008). And recently, both the Seventh Circuit and the Supreme Court have questioned the test's continued vitality. *See Sullivan*, 504 F.3d at 672 (noting that the five-factor test "adds little . . . to the simpler test, and perhaps has outlived its usefulness"); *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2158 (2010) (noting that because five factor tests used by a number of circuits "bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section").

2

Both parties cite cases from this judicial district supporting their position. *Compare Loomis v. Exelon Corp.*, No. 06 CV 4900, 2010 WL 1005037, at *1 (N.D. Ill. Mar. 11, 2010) (requests for costs in ERISA cases governed by Rule 54), *and Armstrong v. Amsted Indus., Inc.*, No. 01 C 2963, 2004 WL 2480998, at *1 (N.D. Ill. Nov. 3, 2004) (same), *with George v. Kraft Foods Global, Inc.*, No. 07-1713, 2010 WL 1976826, at *3 (N.D. Ill. May 14, 2010) (all requests for fees and costs in ERISA cases governed by § 1132(g)(1) and "substantially justified" test), *and Brieger v. Tellabs, Inc.*, 652 F. Supp. 2d 925, 926-27 (N.D. Ill. 2009) (same). The cases cited by defendants have relied on Seventh Circuit decisions affirming awards of costs under Rule 54. *See White v. Sundstrand Corp.*, 256 F.3d 580, 585-86 (7th Cir. 2001); *Quinn*, 161 F.3d at 478-79. But these appellate decisions affirm the awards without discussing the potential conflict between the Federal Rules and § 1132(g)(1). It seems apparent that the issue was never raised, and thus the Seventh Circuit has never decided whether ERISA trumps Rule 54.

The cases cited by Rogers point to the text of Rule 54 and ERISA. The presumption of Rule 54(d)(1) applies "[u]nless a federal statute . . . provides otherwise." Fed. R. Civ. P. 54(d)(1). And the fees provision in ERISA expressly gives the court discretion to award both attorney's fees and "costs of action." 29 U.S.C. § 1132(g)(1). The plain language of these provisions thus suggests that a court should look to ERISA rather than Rule 54 in deciding whether to award costs. *George*, 2010 WL 1976826, at *2. This interpretation makes sense in light of the Supreme Court's recent decision in *Hardt*. In *Hardt*, the Court held, contrary to previous Seventh Circuit law,[3] that § 1132(g)(1) permitted a court to award attorney's fees even though the claimant was not a "prevailing party." 130 S. Ct. at 2156. The Court set forth a less demanding standard: "a fees claimant must show 'some degree of success on the merits' before a

---

[3] Before *Hardt*, Seventh Circuit law permitted an award of attorney's fees only to prevailing parties. *Sullivan*, 504 F.3d at 670.

court may award attorney's fees under § 1132(g)(1)." *Id.* at 2158. The Court focused on the fact that the text of § 1132(g)(1) did not contain the words "prevailing party." *Id.* at 2156. In contrast to the ERISA provision, the Federal Rules expressly allow costs only to the "prevailing party." Fed. R. Civ. P. 54(d)(1). Given the Supreme Court's analysis in *Hardt*, it seems clear that the plain language of ERISA allows a court more leeway in awarding costs than under Rule 54, because § 1132(g)(1) gives the court discretion to award "costs of action" but does not impose a "prevailing party" requirement.

It does not follow from this analysis, however, that the court must use the "substantially justified" test in determining whether to award *costs* in an ERISA action. That test was formulated by the Seventh Circuit as a constraint on the court's discretion when considering an award of *attorney's fees*. *Bittner*, 728 F.2d at 828-30. In explaining the "substantially justified" standard, the *Bittner* court contrasted the legislative history and purpose of ERISA with that of the Civil Rights Attorney's Fees Awards Act, which was designed to encourage civil rights litigation "by allowing prevailing plaintiffs to obtain an award of attorney's fees almost as a matter of course." *Id.* at 829. "There is nothing comparable in the legislative history of ERISA; nor do pension plan participants and beneficiaries constitute a vulnerable group whose members need special encouragement to exercise their legal rights, like a racial minority." *Id.* The court adopted the "substantially justified" test as "a model for courts that must try to give meaning to the word 'discretion'" in § 1132(g)(1). *Id.* at 830. The court described the standard as "the intermediate position between automatic fee shifting (or nearly automatic, as in the Civil Rights Attorney's Fees Awards Act) and the common law position which allows shifting only against the frivolous litigant." *Id.*[4]

---

[4] The Seventh Circuit, in *Bittner*, borrowed the test from the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), which provides for a reasonable attorney's fee to the prevailing party "unless the court finds

4

But the common law treats costs differently than attorney's fees. Rule 54(d)(1) borrows its discretionary standard from the common law rule in equity courts before the enactment of the Federal Rules. Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 10 Federal Practice and Procedure § 2665 at 199-201 (3d ed. 1998). In courts of law, shifting of costs was generally mandatory. *Id*. Given these background rules on cost-shifting, it makes little sense to assume that Congress intended to prevent an award of costs under § 1132(g)(1) in a large proportion of ERISA cases.[5] Because both parties assumed that the "substantially justified" test would apply to any awards under § 1132(g)(1), neither side points to any legislative history of ERISA which could shed light on the intentions of Congress. The most sensible approach to § 1132(g)(1) is to borrow the widely-used standard for awarding costs under Rule 54(d)(1)—giving the court discretion but starting with a presumption in favor of awarding costs—with the exception, after *Hardt*, that costs are available to a party who has achieved "some degree of success on the merits." Nothing in the text of § 1132(g)(1) suggests a different standard.[6]

Applying the standard to this case, the court will award costs to defendants. As previously stated, the general rule is that costs should be denied only when the successful party has committed some misconduct or an award would otherwise be unjust. Rogers is unable to identify any special circumstance which would make an award of costs in this case unjust. He

---

that the position of the United States was substantially justified or that special circumstances make an award unjust." 728 F.2d at 830. The "substantially justified" test in EAJA applies only to attorney's fees. *See* 28 U.S.C. § 2412(d)(1)(A). A court has greater discretion to award costs depending on the circumstances. 28 U.S.C. § 2412(a)(1) (costs "may be awarded"); *Cruz v. Comm'r of Social Sec.*, 630 F.3d 321, 325-26 (3d Cir. 2010).

[5] Rogers correctly points out that ERISA is a remedial statute and should not be construed to impose unnecessary costs on beneficiaries. *See Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 128-29 (7th Cir. 1991). But even in cases under other remedial statutes like 42 U.S.C. § 1983, where fee-shifting is automatic for plaintiffs, awards of costs have been determined using the standard of Rule 54(d), *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006).

[6] This conclusion makes sense of the Seventh Circuit cases which have applied Rule 54(d)(1) to ERISA cases without explanation. Before the recent Supreme Court decision in *Hardt*, § 1132(g)(1) and Rule 54 would have been analyzed using the same standard in the Seventh Circuit because both provisions had been interpreted to include a "prevailing party" requirement.

asserts that "to require Rogers, an individual 401(k) plan participant, to pay $500,000 dollars in an ERISA case to a Fortune 500 company would be a real injustice." (Rogers' Resp. at 7.) But Rogers does not provide the court with any details about his ability to pay. Nor does he inform the court whether or not he will even be obligated to pay an award of costs.[7] Accordingly, the court concludes that an award of costs to defendants under § 1132(g)(1) is appropriate in this case.

B.  **Availability of Defendants' Costs**

The court now turns to the specifics of defendants' requests for costs. The concept of "costs" under Rule 54(d) has a special meaning. *See* Wright et al., *supra*, § 2666 at 202-03. A party is not entitled to all expenses incurred in the litigation. *Id*; *Hairline Creations, Inc. v. Kefalas*, 664 F.2d 652, 655-56 (7th Cir. 1981) ("Thus 'costs' are not equivalent to 'expenses' . . . ."). Rather, a federal statute, 28 U.S.C. § 1920, sets the proper measure of recoverable costs. *Tidemann v. Nadler Golf Car Sales, Inc.*, 224 F.3d 719, 726 (7th Cir. 2000). Defendants contend that § 1132(g)(1) permits the court to award a wider range of expenses, but the court is not persuaded by the cases cited for this proposition. Nothing in the language of § 1132(g)(1), which permits an award of "costs of action," suggests that the limits on taxable costs under § 1920 are inapplicable. *See Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996) ("We therefore hold that [§ 1132(g)(1)'s] allowance for 'costs of action' empowers courts to award only the types of 'costs' allowed by 28 U.S.C. § 1920 . . . .").[8]

---

[7]   The Seventh Circuit has noted that, in large class actions, class counsel may agree to bear the risk of paying an award of costs. "By moving the risk of loss from the representative plaintiffs to the lawyers (who spread that risk across many cases and thus furnish a form of insurance) counsel can eliminate the financial disincentive that costs awards otherwise would create." *White*, 256 F.3d at 586. The court has no idea whether Rogers struck such an agreement with his attorneys, but, even if he did not, awarding costs to defendants would be appropriate. If courts refrain from awarding costs because a class representative will be stuck with the bill, then, in the future, "no sane class-action lawyer would again make the promise [to pay the costs of action]." *Id*.

[8]   Anderson argues that *Agrendo* does not accurately state the law because § 1132(g)(1) permits "costs of action" while Rule 54(d)(1) and 28 U.S.C. § 1920 are limited to costs that can be "taxed." *See* Fed. R. Civ. P.

Defendant Anderson requests a total of $190,581.09 in costs, including (1) $4,070.95 for transcripts, (2) $10,673.10 for photocopying, (3) $2,687.04 for exemplification of trial exhibits, and (4) $173,150.00 for expert witness expenses. Rogers objects only to the expert witness expenses, and the court agrees with Rogers. "Witness fees are recoverable under § 1920(3), but only to the extent allowable by 28 U.S.C. § 1821." *Richman v. Sheahan*, No. 98 C 7350, 2010 WL 2889126, at *3 (N.D. Ill. July 14, 2010) (citing *Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.,* 801 F.2d 908, 910 (7th Cir.1986)). From the materials provided by Anderson, the court cannot ascertain whether any part of the $173,150.00 requested would be compensable under § 1821. Accordingly, the court denies the request for expert expenses and awards Anderson the remaining $17,431.09 in costs.

Defendants Baxter and Kraemer request a total of $306,251.26 in costs, including (1) $23,163.44 for transcripts and video recordings of court hearings and depositions, (2) $6,956.60 for photocopying court documents and preparation materials for depositions, (3) $112,648.13 for exemplification and copying costs incurred in connection with responding to discovery requests, and (4) $163,474.09 for the cost of computerized legal research. Rogers objects to the third and fourth categories of costs.

Of the costs in the third category, Rogers objects to $78,467.37 in fees paid to an e-discovery vendor. According to Baxter and Kraemer, those costs were incurred for converting electronic data into a format requested by the plaintiff during discovery. They cite *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (affirming award of costs for "converting

---

54(d)(1) ("The clerk may *tax* costs on 14 days' notice.") (emphasis added); 28 U.S.C. § 1920 ("A judge or clerk of any court of the United States may *tax* as costs the following . . . .") (emphasis added). This argument is not persuasive when considering that the Seventh Circuit has held that the term "costs" carries a special meaning in the context of fee-shifting statutes. *See Hairline Creations*, 664 F.2d at 655-56.

computer data into readable format in response to plaintiffs' discovery requests"), in support of the request. An attorney for defendants has submitted an affidavit explaining:

> To locate, review, and produce relevant documents that were electronically-stored on Baxter's e-mail and other document management systems, Baxter and Mr. Kraemer were required to retain an outside e-discovery vendor to process data into a readable format that could be reviewed and produced to plaintiff. . . . Further, in addition to being a necessity to produce responsive documents, this data processing comported with plaintiff's expectations that documents be produced in an electronic format compatible with plaintiff's data systems and that metadata associated with the documents be preserved.

(Fuchs Aff. ¶ 27.) Baxter and Kraemer also have submitted copies of invoices from the vendor. The problem with this evidence, as Rogers points out, is that it is almost impossible to determine whether all of this cost was necessary to put the data into the format required for production to plaintiff or whether some amount was spent on making the data more amenable to review by defendants. Money spent for the former purpose is compensable, but money spent on the latter is not. *See Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 644 (7th Cir. 1991) (holding that costs of data conversion which save time that would be spent reviewing the data are "not recoverable as copying costs") (quoting *EEOC v. Sears, Roebuck & Co.*, 114 F.R.D. 615 (N.D. Ill. 1987)). The invoices submitted by Baxter and Kraemer provide no assistance to the court in assessing what work was actually performed, and the accompanying affidavit describes the work in only the most general terms. Accordingly, the court declines to award defendants these costs.

Rogers also objects to $15,001.76 spent on digitizing and scanning documents that existed in hard copy form. This process appears to have cost as much as twice the amount of photocopying. Defendants' affidavit fails to explain the necessity of this expense, and the court will not award the costs. That leaves a total of $19,179.00 in recoverable costs from the third category.

Finally, Rogers objects to the fourth category of costs, the request for the expense of computerized legal research. The parties cite Seventh Circuit cases which appear to contradict one another. *Compare Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 700 (7th Cir. 2008) (affirming award of costs for computerized research), *and Burda v. M. Ecker Co.*, 2 F.3d 769, 778 (7th Cir. 1993) (same), *with Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409 (7th Cir. 2000) (affirming denial of costs for computerized legal research), *and Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 38 F.3d 1429, 1440-41 (7th Cir. 1994). The cases cited by defendants state only the conclusion that computerized research is compensable without discussing the rationale or the authority for this proposition. The *Haroco* court, on the other hand, explains that computerized research is properly categorized as attorney's fees because the expense is incurred to save the attorney the time that otherwise would be spent in a law library. 38 F.3d at 1440-41. Accordingly, the court will follow *Haroco*.

Baxter and Kraemer argue that, even if the cost of research is considered attorney's fees, they are entitled to be reimbursed under § 1132(g)(1) because Rogers' position in this litigation was not substantially justified. Baxter and Kraemer contend that Rogers conducted no pre-suit investigation before initiating these proceedings and simply copied the complaint's allegations from two other complaints in securities class action lawsuits against Baxter. Defendants point out that Rogers admitted during discovery that he consulted only publicly available sources of information before filing suit. From this admission, defendants conclude that Rogers did not conduct any investigation and merely copied the other complaints. However, the court does not agree that such an inference is possible. Class action plaintiffs will often be limited to reviewing publicly available information. The fact that some of the paragraphs in Rogers' complaint are identical to those in other complaints does not establish that Rogers' attorneys did not conduct

their own investigation. Baxter and Kraemer make a number of other arguments, contending that, at some point during the litigation, Rogers should have realized that the litigation no longer had a solid basis. Even if the court were to accept some of these arguments, defendants would only be entitled to recover expenses incurred after the lawsuit's foundation fell away. The only documentation provided for these costs, however, is an affidavit stating the total amount spent on Westlaw and Lexis research. (*See* Fuchs Aff. ¶¶ 34-35.) The court cannot determine when the expenses were made or for what purpose. Accordingly, the court denies defendants' request for the cost of computerized legal research.

### III. CONCLUSION

Anderson's motion for costs is granted in part and denied in part. The court awards Anderson $17,431.09 in costs. Baxter and Kraemer's motion for costs is granted in part and denied in part. The court awards Baxter and Kraemer $42,299.04 in costs.

ENTER:

                                            /s/
                             JOAN B. GOTTSCHALL
                             United States District Judge

DATED: March 16, 2011